[Civ. No. 13691.   First Dist., Div. Two.   Aug. 4, 1948.]

MARJORIE FRANCES HUNT et al., Respondents, v. STATE BOARD OF CHIROPRACTIC EXAMINERS et al., Appellants.

Fred N. Howser, Attorney General, J. Albert Hutchinson and Leo T. Englert, Deputy Attorneys General, for Appellants.

Frank V. Kington for Respondents.

NOURSE, P. J.—Three actions in mandate, one in injunction, and one in declaratory relief were consolidated for trial. All involved the question of the power of the defendant board to adopt rules governing the examination and licensing of chiropractors. Three of the plaintiffs sought mandate to admit them to examination though they had not completed the hours of study required by the rules of the board. One sought an injunction against enforcement of a rule requiring 50 per cent vision and hearing. The Ratledge School sought declaratory relief attacking the rules of the board relating to required study and education. Plaintiffs had judgment in each case. The only question requiring consideration on defendants' appeal is whether the board has power to enact rules imposing requirements and restrictions on applicants for license above or in excess of those enumerated in the initiative act.

The chiropractic board was created by initiative act, approved November 7, 1922 (Bus. & Prof. Code, App. p. 849; Stats. 1923, p. xx; 2 Deering's Gen. Laws, Act 4811). Section 4 (b) and (e) read: "To adopt from time to time such rules and regulations as the board may deem proper and necessary for the performance of its work, copies of such rules and regulations to be filed with the secretary of state for public inspection. . . . To do any and all things necessary or incidental to the exercise of the powers and duties herein granted or imposed." Section 5 provides that an applicant shall be a graduate of an incorporated chiropractic school which teaches a course of "not less" than 2,400 hours in specified subjects. The requirement is declared to be a "schedule of minimum educational requirements" (§ 5).

In conformity with the provisions of section 4 above noted the board adopted on February 12, 1944, 16 Cal. Adm. Code 322(f) which provides in part: "(a) The required number of academic hours of attendance in any Chiropractic School or College in the State of California will be four thousand (4000) for all students matriculating after March 1, 1944." At the same time 16 Cal. Adm. Code 322(h) was adopted reading as

follows: "(c) All students shall have at least fifty (50) per cent vision and hearing, and no major physical defects."

Directed to the three plaintiffs who sought mandate to admit them to licensure examinations and to the school seeking declaratory relief the issue is whether the provisions of the act fixing minimum educational requirements exclude the right of the board under its rule making power to demand additional and higher educational standards.

■ Before we answer the question propounded it is well to look at the elementary rules governing mandate. This is not a writ of right to be freely issued whenever a court disagrees with the policy of the administrative action. It is limited by the Code of Civil Procedure (§§ 1085 et seq.) "to compel the performance of an act which the law specially enjoins, as a duty. . . ." It is settled law that when a statute imposes upon an administrative body discretion to act under certain circumstances mandate will not lie to compel the exercise of such discretion in a particular manner. (16 Cal.Jur. pp. 809, 817.) Hence, if the chiropractic board has power under the statute to raise the educational requirements for admission to practice, the advisability or wisdom of the board's regulations is not a matter to be controlled by the courts. What may be deemed a qualification of this statement is the rule which is applied when the administrative board has acted capriciously or arbitrarily. Then mandate will issue to compel the board to perform the act which the statute requires. But these side issues are not applicable here and cases of that nature cited in the briefs have no bearing since the facts of these proceedings do not bring them within the scope of the rules. Here the single controlling issue is whether the appellant board had the power under the statute to enact and enforce the rules complained of.

■ The statute prescribes a schedule of "minimum" educational requirements prerequisite to examination for license to practice covering 2,400 academic hours. This was enacted in 1922. The appellant board, in 1944, by rule increased the required number of academic hours to 4,000. It is hardly necessary to allude to the great number of changes and improvements that have been made in the healing arts during this period of 22 years. It can not be argued that the appellant board acted arbitrarily or unreasonably in demanding this additional education. To the contrary, it would be more reasonable to say that it would have been deficient in its duties as

an agency concerned with the public health and welfare if it had neglected to so act.

■ It is a fair and reasonable interpretation of the statute that it was intended to permit the board to take cognizance of these conditions so as to provide more efficient treatment of the sick, and that it was with such purpose in view that the statute fixed the ''minimum'' requirements and gave to the board the power to enact rules ''proper and necessary for the performance of its work.'' If this is not a proper interpretation of the statute, then we can see no reason for the use of the word ''minimum'' in section 5. Respondents' argument that the statute was enacted to relieve the chiropractors from the unreasonable control of the medical board does not explain the use of the word ''minimum.'' If the purpose was to fix a schedule of educational requirements which no board or agency could exceed then the proper word would have been ''maximum.'' But in fixing a ''minimum'' schedule the meaning expressed in the clear language of the statute is that ''at least'' such hours of instruction were required and thus it was left open to the board to require additional instruction either in the same subjects of study specified in the statute or in new or additional subjects as the board might determine. For these reasons the judgments in the four causes which were based on the additional educational requirements cannot be sustained.

■ The appeal from the judgment in favor of Ray Penix presents no legal difficulties. On February 12, 1944, the board adopted 16 Cal. Adm. Code 322(h) reading: ''All students shall have at least fifty (50) per cent vision and hearing, and no major physical defects.'' The judgment declares the rule unenforceable. The respondent defends the judgment on the ground that the board was without power to adopt the rule and argues that the question of the reasonableness of the rule is not open to discussion. With this we do not agree. The question of power is answered in what we have said heretofore. Since the rule is applicable to all those seeking license to practice it is clearly within the powers of the board. No provision of the statute fixes physical qualifications. The rule is therefore not in conflict with the statute, and the only question debatable is whether it is unreasonable, arbitrary or capricious. The effect of respondent's argument is that the board is without power to deny a license to one who is totally blind, deaf, or without arms or hands, or to one who is confined in a state penitentiary or mental institution. The unreasonableness of

this possibility negatives the contention that the statute does not authorize the appellants to forestall the absurdities by appropriate rules and regulations. The respondent does not contend that the application of the rule to his case was unreasonable or improper on any other ground.

The judgments in each of the five consolidated actions are reversed.

Goodell, J., and Dooling, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 30, 1948. Carter, J., voted for a hearing.