[Civ. No. 13658. First Dist., Div. One. Nov. 12, 1948.]

BLATZ BREWING COMPANY (a Corporation) et al., Respondents, v. R. E. COLLINS et al., Appellants.

Fred N. Howser, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Athearn, Chandler & Farmer, Hoffman & Angell, Walter Hoffman, Edward G. Chandler and Theodore P. Lambros for Respondents.

BRAY, J.—Appeal from a judgment on the pleadings in favor of plaintiffs.

This action was brought for an injunction and declaratory relief to obtain an adjudication that rule 55 of the State Board of Equalization, pertaining to out-of-state manufacturers of beer who ship their product into the state, is void. (This rule is now known as No. 128, California Administrative Code, ch. 1, tit. 4, and will be generally referred to herein as rule 128.)

In 1944, the trial court sustained without leave to amend the demurrer of defendants to the complaint. From the judgment thereon, plaintiffs appealed to this court, and the judgment was reversed with instructions to the trial court to overrule the demurrer, giving defendants a reasonable time to answer. (*Blatz Brewing Co.* v. *Collins,* 69 Cal.App.2d 639 [160 P.2d 37].) Thereafter plaintiffs filed certain affidavits and correspondence, and secured, ex parte, a restraining order and order to show cause for temporary injunction, returnable September 5, 1946. On August 30th, plaintiffs filed a notice of motion for judgment on the pleadings, a certain stipulation, and an additional affidavit in support of the order to show cause, together with a purported copy of defendants' answer. After continuances by stipulation, both matters were heard on September 12, 1946. The motion for judgment on the pleadings was denied and leave granted defendants to answer. The temporary injunction was issued. Defendants answered[1] and thereupon plaintiffs again moved the court for judgment on the pleadings. At the hearing certain oral proceedings were had. Defendants, pursuant to the suggestion and leave of the trial court, filed an amendment to their answer, admitting certain formal allegations in plaintiffs' complaint. Thereafter the motion was submitted on briefs and the court entered the following minute order: "Motion for Judgment in favor of plaintiff granted on the admitted and stipulated facts as shown by the records, files & papers herein and on the law as decided by the District Court of Appeal in *Blatz Brewing Co.* v. *Collins* Civil No. 12779 First App. Dist. Division I. Findings of Fact and Conclusions of Law to be prepared by plaintiffs counsel." Except in matters not important here, the findings followed the allegations of the complaint. As the complaint is the

---

[1] Apparently defendants' answer was lost and an "amended and supplemental answer" was later filed. Throughout this opinion, we have referred to it as the "answer."

identical one passed on in our former decision, it is not necessary to set forth its contents here. The judgment held that rule 128 was void, and restrained defendants from attempting to enforce it.

The primary question involved is the validity of rule 128. This involves the question as to whether the prior decision of this court constitutes the law of the case, and if it does, whether defendants' answer set up additional matters which were not then considered and which would make the law of the case not applicable.

### JUDGMENT ON THE PLEADINGS

Preliminarily, defendants attack the right of the court to make a judgment on the pleadings without taking testimony concerning the affirmative matters alleged in defendants' answer. A study of the transcript of the oral proceedings on the motion for judgment on the pleadings, shows there was considerable confusion as to just what the court was to act upon. Plaintiffs contended that in addition to the pleadings the court should consider a stipulation made at a hearing on the injunction in November, 1943, between the attorney general and the attorneys for plaintiffs, as to certain factual matters and to the effect that the only question before the court was the validity of the then rule 55. The defendants contended that this stipulation no longer applied, and that the court should take evidence on the matter set up in their answer. Finally, defendants agreed to amend their answer so as to admit certain allegations of the complaint which they had denied. (This they later did.) While the situation at the hearing was considerably confused, counsel stated at argument before this court that a fair statement of what was presented to the court when the hearing closed, was that the court should consider the allegations of the complaint and the affirmative allegations of the answer when amended, as true, and should determine the validity of rule 128, and in doing so must determine, first: Is the decision on the former appeal the law of the case? Secondly: If so, does the matter set forth in defendants' answer change the situation as to the law laid down in that decision? Thirdly: If that decision is not the law of the case, is rule 128 valid?

### LAW OF THE CASE

To determine this question it is necessary to consider generally the decision on the former appeal. The then rule 55 of the Board of Equalization (the present rule 128 of the

Administrative Code is identical in language) provided: "On and after July 1, 1941, no beer wholesaler nor beer importer shall purchase any beer not manufactured within the State of California by a manufacturer holding a license as a beer manufacturer from the State of California, or transport or cause the same to be transported into the State of California for resale therein, unless the manufacturer of such beer has obtained from the board and holds a valid unrevoked and unsuspended certificate of compliance. A certificate of compliance shall be granted when such manufacturer of beer shall have made a written agreement with the board to furnish to the board, on or before the fifteenth day of each month, a report under oath, on a form to be prescribed by the board, showing the quantity of beer sold or delivered by such manufacturer to each licensed beer importer in this State during the preceding month and shall further have agreed with the board, that such manufacturer of beer and all general sales corporations or agencies owned and maintained by it shall and will faithfully comply with all laws of the State of California pertaining to the sale of alcoholic beverages and all rules and regulations of the board. If any such manufacturer of beer shall, after obtaining such certificate, fail to submit such report, or if such manufacturer or general sales corporation or agency owned and maintained by it shall violate the terms of such agreement, the board may suspend or revoke the certificate of compliance in the manner provided by the Alcoholic Beverage Control Act for the suspension or revocation of licenses, and after a hearing which shall be held in the City of Sacramento or in such other county seat in this State as the board determines to be convenient to the holder of the certificate. No fee shall be charged for such certificate of compliance but same must be renewed annually on or before July 1st of each year hereafter."

After quoting this rule the opinion states (p. 642): "It will be noted that this rule provides: (1) that no beer wholesaler or importer in California shall purchase or bring into California beer manufactured outside the state unless the manufacturer of such beer holds the valid unrevoked and unsuspended certificate of compliance provided for in the section; (2) such certificate of compliance will only be granted if the out-of-state beer manufacturer agrees with the board in writing, (a) to make to the board a monthly report of beer sold to California importers; (b) that such manufacturer and all general sales corporations or agencies owned or maintained

by it, will faithfully comply with all California laws pertaining to the sale of alcoholic beverages and also all rules and regulations of the board; and (3) that, for failure to file the required reports, or violating the terms of the agreement, the board may suspend or revoke the certificate of compliance, after hearing in the manner provided by the A. B. C. Act for suspension or revocation of licenses.

"The question of the authority to adopt rule 55 primarily depends upon the question as to whether or not the so-called 'certificate of compliance' is a license. The defendant board concedes that the A. B. C. Act gives the board no authority to require an out-of-state beer manufacturer to obtain a license in order that its beer may be sold in this state. The board contends that rule 55 is an administrative regulation and not a grant of authority or permission to perform designated acts, as is a license. Plaintiffs contend to the contrary. This is the crux of the case."

The opinion then goes on to hold flatly and definitely that the rule prescribes a license, and that "An examination of the A. B. C. Act shows that the Legislature very comprehensively covered the entire field of alcoholic beverage control and licensing in California. The act provides twenty-four different types of licenses. It is significant that the basic theory of the act is to make the licenses locational rather than personal. . . .

"The Legislature in framing the act did not see fit to provide a license for out-of-state manufacturers of beer, although it did provide for licensing in-state manufacturers. The board by rule 55 does attempt to do this, and in the words of defendants' brief, 'Should the board attempt to add additional types of licenses, it would in effect usurp the power of the Legislature.' . . .

". . . we find that the Legislature provided no yardstick for the regulation of out-of-state beer manufacturers in the manner attempted by the board, other than that it obviously appears from the whole act that the Legislature figured that the entire subject was covered or was to be left unregulated. Moreover, rule 55 definitely attempted to enlarge and extend the statute, which is beyond the power of the board. . . .

"Not only does rule 55 require a license not contemplated by the Legislature itself, but it provides a penalty additional to and different from the penalties provided in the act, since it outlaws the product, rather than preventing the operations of the licensee at a particular premise only. . . .

"To sum up, rule 55 is void, because, (1) section 38e of the A. B. C. Act, the claimed source of authority for the rule, is restricted solely to the subject matter of the section and does not authorize the board to adopt such a rule; (2) the rule is contrary to the entire concept and theory of the act; (3) the rule prescribes a type of license and a theory of liquor control fundamentally different from those contemplated by the act; and (4) the rule provides a penalty additional to and different from the penalties provided by the act."

In view of defendants' present position, it is interesting to note that in petitioning the Supreme Court for a hearing after our decision (which hearing was denied by a four-to-three vote), defendants stated, as a ground for consideration of the appeal by that court: "This Court should not let the instant decision become the 'law of the case' in a proceeding involving the public interest."

Defendants contend that the law of the case does not apply to decisions on appeals based on the sustaining or overruling of demurrers. In support of this contention, they cite no case concerning demurrers. The cases cited are not in point. For example, *Erlin* v. *National Union Fire Ins. Co.*, 7 Cal.2d 547 [61 P.2d 756], concerns the effect upon a second trial of the decision of the appellate court upon the facts then presented. In *First Nat. Bank* v. *Stansbury*, 118 Cal.App. 80 [5 P.2d 13], the court was considering the effect of the decision on a former appeal where at the second trial the pleadings were amended, and different facts presented.

It has frequently been held that questions presented and decided by the appellate court upon appeal from a judgment on demurrer become the law of the case, and are not open to question on a subsequent appeal. In *Wise* v. *Williams*, 88 Cal. 30 [25 P. 1064], the court on an appeal from a judgment upon demurrer "held, among other things, that the allowance of a claim by an administrator, and its approval by the judge, stopped the running of the statute of limitations." (P. 32.) On an appeal from a judgment on the trial of the case the court held that the decision on the former appeal was the law of the case, and that "nothing that was then decided is open to question now." Other cases holding that the decision on the former appeal from a judgment on the demurrer is the law of the case, are *Benson* v. *Bunting*, 141 Cal. 462 [75 P. 59]; *Baird* v. *Olsheski*, 116 Cal.App. 109 [2 P.2d 493]; *Little* v. *Caldwell*, 112 Cal. 27 [44 P. 340].

The general rule as to the law of the case is well stated in *Estate of Baird,* 193 Cal. 225, at page 234 [223 P. 974]: "The rule of the law of the case may be succinctly stated as the rule requiring both trial and appellate courts to follow the rules laid down upon a former appeal whether such rules are right or wrong." "The evidence [in the second trial] may be different and yet unless it is substantially different in a material respect, the doctrine of the law of the case applies, and it applies notwithstanding the fact that in the previous decision evidence contained in the record is not quoted or cited in the opinion." (P. 236.)

Defendants contend that the law of the case does not apply to questions of public interest. However, as early as *Leese* v. *Clark,* 20 Cal. 387, 418, the law of the case was upheld to a question of great public interest, the validity of a Mexican grant, a United States patent, and American alcalde grants of land in San Francisco. Defendants also contend that the law of the case doctrine does not apply in injunctive proceedings where the judgment must operate affirmatively and prospectively. The cases cited in support of that proposition do not so hold, but are concerned with the question of ratification and the applicability of laws passed after a previous decision of the court. They are cases like *Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.,* 3 Cal.2d 489 [45 P.2d 972, 1014], and *Hodges* v. *Snyder,* 261 U.S. 600 [43 S.Ct. 435, 67 L.Ed. 819], in which the court was considering a change in the law, and the question was which law applied.

Defendants argue that because the former decision directed the trial court to permit defendant to file an answer, it did no more than hold that the complaint stated a cause of action. To determine that the complaint did state a cause of action we had to hold, as we did, that rule 55 was invalid, and such holding became the law of the case. In permitting the filing of an answer we gave the defendants an opportunity of doing just what they did, setting up any affirmative matters not then before the court which they might think would change our opinion. Our former decision is the law of the case insofar as the matters alleged in plaintiffs' complaint are concerned.

### AFFIRMATIVE DEFENSES IN ANSWER

This brings us to the question of whether the matters set up in defendants' answer (assuming them to be true), which

were not before the court on the former appeal, require a different conclusion.

Defendants allege that the rule is authorized by the state Constitution and the Alcoholic Beverage Control Act [Stats. 1935, p. 1123; 2 Deering's Gen. Laws, Act 3796], and that the Legislature in 1933 by the State Liquor Control Act delegated to the board power sufficiently broad to support the instant rule, and that the electorate in 1934 by constitutional amendment ratified such legislative delegation. These contentions, of course, were determined by the former opinion, so that it becomes unnecessary to discuss the many points again raised and which were considered by the court heretofore or necessarily included in its opinion.[1] In the former opinion we held that the board did not have power or authority to adopt the rule. We did not pass upon the question of whether the Legislature could have conferred power on the board to require a license, but held that it did not do so.

### RATIFICATION

■ It is contended that the rule, originally adopted by the Board of Equalization in 1941, has been ratified by subsequent amendments to the Alcoholic Beverage Control Act. In this behalf, defendants call attention to the history of the rule. In 1941, the Legislature passed an amendment to the Alcoholic Beverage Control Act, adding a section 38.5 which was identical in language with rule 55. The governor vetoed the bill. Following the veto a member of the Senate requested an opinion from the attorney general as to the power of the board to adopt rule 55, then proposed, and was advised that the adoption of the rule was within the powers of the board. Between the legislative sessions of 1941 and 1945 no amendments of the Alcoholic Beverage Control Act bearing upon the question here were proposed.

At the 1945 session the two amendments upon which defendants specially rely were adopted. In the act as it existed when rule 55 was adopted, section 38 provided: "The board shall administer all of the provisions of this act and to that end shall prescribe all necessary rules and regulations to carry out such provisions. For the performance of its duties the board shall have the power conferred by section 353 of the Political Code." Section 38e, which was headed "Filing

---

[1] 2 Cal.Jur. 966-967. See *Neale* v. *Morrow*, 163 Cal. 445 [125 P. 1052], holding that the former opinion on appeal from a judgment sustaining a demurrer is the law of the case as to matters " 'actually and necessarily included therein or necessary thereto.' "

of beer price schedules: Abetting violations forbidden: Suits by trade associations: Revocation of licenses," provided, in part: "The board may adopt such other rules and regulations as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer; provided, that no such action shall be taken by the board except after public hearing and ten (10) days notice to all licensed manufacturers of beer in California of the time and place of such hearing and of the character of the action intended to be taken by the board."

On the former appeal we held that section 38e was limited in its scope, and that the authority granted in that section was confined to matters having to do with the stabilization of the wholesale prices of beer. We held that section 38 was the only section which attempted to give over-all authority to the board, and that it did not give the board authority to adopt rule 55 "as it is restricted solely to authority for the purpose of administering and carrying out the provisions of the act." (P. 649.)

Defendants contend that our opinion was based solely upon the fact that section 38e applied only to beer prices, but they overlook the fact that the main basis of our opinion is that the Legislature by the act had set up a complete scheme of beer licensing, and that the board was attempting to add to that scheme a license not contemplated or directly or indirectly authorized by the Legislature.

In 1945, the Legislature amended section 38 to read: "The board shall make and prescribe such reasonable rules and regulations as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the Constitution and to enable it to exercise the powers and perform the duties conferred upon it by said section or by the provisions of this act, not inconsistent with any of the provisions of any statute of this State (including particularly the provisions of this act and the provisions of Chapter 5 of Part 1 of Division 3 of Title 2 of the Government Code). For the performance of its duties the board shall have the power conferred by section 353 of the Political Code." It also added section 38g which adopted verbatim the language above quoted from section 38e.

Defendants contend that by amending section 38 to the effect that the board should make such reasonable rules as might be necessary to carry out the intent of the Constitution, and by adding a general section that the board might

adopt such rules as would foster and encourage the orderly wholesale marketing and distribution of beer, the Legislature was ratifying rule 55. We are not concerned with the question of whether these amendments might not authorize the making of such a rule, but only with the question of whether these amendments constitute a ratification by the Legislature of the rule already adopted. If ratification had been intended, it is rather strange that, in view of our clear-cut holding that the rule was completely out of line with the scheme of liquor licensing evolved by the Legislature, that body would have used such an oblique way of approving the rule. It would have been much more simple to have adopted the rule as it did in the vetoed bill of 1941. In view of that veto and of our holding, it is clear that these amendments do not constitute a ratification. Moreover, the use of the words "shall make" in section 38 and "may adopt" in section 38g is peculiar for ratification. They are obviously prospective and enabling only. See *Ex parte Sparks*, 120 Cal. 395 [52 P. 715], and *Fleming* v. *Hance*, 153 Cal. 162 [94 P. 620], where it was held that the unauthorized establishment of police courts in the cities of Sacramento and Los Angeles, respectively, was not validated by a subsequent amendment to the Constitution which provided that "it shall be competent" for cities in freeholders' charters to provide for police courts.

Again, both amendments refer to the power of the board to make "rules and regulations," whereas the rule attacked here is not an administrative rule or regulation, but, as we heretofore held, an attempt to grant authority or permission to perform designated acts, and to prescribe a license. Section 38 provides that the rules and regulations may not be "inconsistent with any of the provisions of any statute of this State (including particularly the provisions of [this act])." We also held in the former opinion that "the rule is contrary to the entire concept and theory of the act." (P. 654.) Certainly the amendments did not change the concept and theory of the act.

Although defendants claim that section 38 as amended in 1945 and sections 38a and 38g include the precise wording of the Michigan Liquor Control Act as set forth in *Zukaitis* v. *Fitzgerald*, 18 F.Supp. 1000, an examination of that case shows the statement to be incorrect and the wording of the Michigan statute decidedly different. The language there is

much broader, contains no limitations, and indicates an intent by the Legislature not to legislate on these matters.

## RESOLUTIONS

Defendants rely, too, on a resolution of the board sent and read to the Legislature when it was considering the addition of section 38g, which declared the policy of the board, if that section was added, to adopt only such rules as would not constitute trade barriers, and would permit fair and equal opportunities to all beer manufacturers within and without the state. Resort to such resolution to interpret whether section 38g is prospective or retroactive cannot be had unless the section is ambiguous. (*Dillman* v. *McColgan,* 63 Cal.App. 2d 405 [146 P.2d 978].) The section is not ambiguous. It is clear that it is prospective in its effect. While the resolution claims that section 38g is a restatement of the law in section 38e which had been interpreted by the attorney general, and mentions a rule which requires out-of-state beer manufacturers to promise to obey the provisions of the Alcoholic Beverage Control Act, it nowhere refers to the necessity for the certificate of compliance. Moreover, the resolution is prospective in its tenor, as it declares the policy of the board to consider and adopt only reasonable and fair rules if the section is enacted, and in no wise indicates that such an enactment would be a ratification of rules theretofore adopted. A subsequent resolution of the board states that since the passage of Senate Bill 800, which is the bill enacting section 38g, our decision on the former appeal had been rendered, "from which decision it appears that Section 38g should not have been inserted in Senate Bill 800;" that the author of the bill appeared before the board and stated that had he known of the pendency of this action he would not have permitted that section to be incorporated in the bill; that in his opinion, had the Legislature known the situation, it would not have passed the bill; and that at the next session, either special or general, he would move to repeal that section. It was then resolved that the board would take no further action under the provisions of section 38g, and advocated the repeal of the section. It is apparent from this resolution that the board considered the section to have been prospective rather than a ratification of previous acts. However, assuming, as contended by defendants, that these resolutions constitute an administrative interpretation favorable to them, the principle laid down in *Whitcomb Hotel, Inc.* v. *California Emp.*

*Com.*, 24 Cal.2d 753 [151 P.2d 233, 155 A.L.R. 405], applies. While "The construction of a statute by the officials charged with its administration must be given great weight" (p. 756), "an erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change. [Citing cases.]" (P. 757.)

### SEPARABILITY OF RULE

■ Defendants contend that the rule is separable, that is, that the requirements to file reports and obey the law can be separated from the certificate of compliance requirement, and that these matters are within the rule-making power of the board. Aside from the fact that our former opinion held the rule invalid *in toto,* a mere reading of the rule shows that the certificate of compliance is the basic requirement thereof, around which everything else moves. So far as reports are concerned, section 26 of the act already requires monthly reports of beer sold in the state during the previous month. But rule 128 provides that the out-of-state manufacturer cannot import beer into the state without the certificate of compliance. That is its primary purpose.

As separate defenses, defendants urge that the rule aids in the prevention of tax avoidance (including tax avoidance by retail and other beer dealers within the state), assists in the enforcement of the penal and forfeiture provisions of the act (again including persons within the state who might violate the law), and that its purpose and effect is to prevent the improper importation of beer and its diversion from authorized channels. Numerous examples in which it is claimed that the rule has had the above mentioned effect are set forth in the answer. However, the fact that the rule is a good rule and has the effect claimed for it, does not validate an unlawful rule. As the board did not have power to make the rule, the fact that it might be beneficial is immaterial. Defendants contend that because the results would be beneficial, the rule is one which in the words of section 38e "will foster and encourage the orderly wholesale marketing and wholesale distribution of beer," and is therefore authorized by that section. But there is ample authority in the act for the board to obtain such helpful reports in some fashion other than by a rule which requires a license not required by the act.

Defendants contend that "The purpose of the rule included that of seeking to prevent unfair trade practices, secret rebates

and tied-house violations prohibited to in-state brewers.'' However, section 54 of the act forbids the doing of all of these things by any ''manufacturer, manufacturer's agent, rectifier, distiller, bottler, importer or wholesaler or any officer, director or agent of any such person.'' The only thing the rule in question effects in addition is the requirement of the license.

A reading of the rule indicates that the certificate of compliance is the basic requirement thereof. The rule provides, first, that no beer importer shall handle beer of an out-of-state manufacturer unless the latter holds a certificate of compliance. Then the rule provides what the manufacturer must do to receive such certificate, namely, file the reports and agree to comply with the state laws. Finally, if the manufacturer thereafter fails to comply, the certificate will be revoked or suspended in the same manner as licenses of the board are. If only reports were desired by the board, the matter is expressly covered by section 26 of the act which requires that each taxpayer shall render monthly reports of the beer sold in the state during the previous month. Such reports could also be required under section 38a which makes failure to comply a misdemeanor. Under the present rule, without the certificate of compliance, the out-of-state manufactured beer cannot legally be imported into the state. (See *Blatz Brewing Co.* v. *Collins, supra,* p. 653.)

## POWERS OF BOARD INDEPENDENT OF LEGISLATURE

Defendants contend that the board has an existence and powers given it by the Constitution and which are independent of the Legislature. While this contention was made and determined adversely to defendants in the former opinion, defendants have cited five cases decided since that time which they contend support their contention. They are *Moore* v. *State Board of Equalization,* 76 Cal.App.2d 758 [174 P.2d 323] ; *Sandstrom* v. *California Horse Racing Board,* 31 Cal.2d 401 [189 P.2d 17] ; *Covert* v. *State Board of Equalization,* 29 Cal. 2d 125 [173 P.2d 545] ; *Reynolds* v. *State Board of Equalization,* 29 Cal.2d 137 [173 P.2d 551, 174 P.2d 4], and *Nelson* v. *Dean,* 27 Cal.2d 873 [168 P.2d 16, 168 A.L.R. 467]. In the Moore case the Board of Equalization revoked appellant's ''off-sale'' liquor licenses for selling whiskey at a price higher than the ''ceiling'' price fixed by the Federal Emergency Price Control Act [56 Stats. 23, 50 U.S.C.A. §§ 901-946]. The board had previously adopted a rule making such violation

grounds for revocation of licenses. It was contended that the Alcoholic Beverage Control Act did not make such violation a ground of revocation. The court held, however, that both the constitutional provision and the Alcoholic Beverage Control Act empowered the board to revoke a license upon a determination that its continuance would be contrary to public welfare or morals and hence the board had the power to make such rule. It also held that the constitutional provisions confer power independently upon the board which power the Legislature cannot restrict or diminish. It then held that in adopting the rule in question the board did not rely on the rule making power given it in the act, but that the source of its power was the Constitution, and that our opinion in the Blatz case was not in point for that reason. It will be noted that in the Moore case, the board was exercising its quasi judicial powers. The grounds of revocation were within those powers. In our case, however, the board was legislating as to licenses. Quasi judicial powers were in question in the Sandstrom case, *supra*, where a rule of the state racing board was upheld, which made trainers responsible for the condition of horses in his care and providing for his suspension in case any of his horses raced while "doped." In that case the court pointed out that the legislative act which gave full power to the racing board to prescribe rules, regulations and conditions governing racing, was expressly confirmed, ratified and declared to be fully and completely effective by a constitutional amendment thereafter adopted. Thus both in the Moore and Sandstrom cases, neither the Constitution nor the Legislature had set up a scheme or plan which the rule violated, as did the one in the case at bar, but, on the other hand, such rules were actually carrying out the intent of the Constitution and the Legislature.

In the Covert case, *supra*, the court was determining the powers and duties of the Board of Equalization, as to the revocation of licenses, and held: "An examination of the Constitution of California shows that the State Board of Equalization, unlike most other agencies of statewide authority (see *Laisne* v. *California State Board of Optometry*, 19 Cal.2d 831 [123 P.2d 457]), has specifically been given quasi judicial, or adjudicating power, that is, the right to make determinations of fact which are not subject to reexamination in a trial de novo in the superior court." (P. 131.) The Reynolds case, *supra*, was a companion case to the Covert one, in which the court upheld the power of the board to

suspend, rather than revoke, a license. The Nelson case, *supra,* was likewise dealing with the semijudicial powers of the State Personnel Board. All of these cases involved the quasi judicial powers of administrative boards, which come from the Constitution directly. To hold that the same rule applies to the legislative powers of the board would mean that the Legislature had no power to provide a scheme of licensing in the Alcoholic Beverage Control Act. The determination of the kinds, character and cost of all liquor licenses would be entirely in the hands of the board. Even the attorney general at argument refused to go that far. *State Board of Equalization* v. *Young's Market Co.,* 299 U.S. 59 [57 S.Ct. 77, 81 L.Ed. 38], cited by defendants on this question, is not in point. It considers only the effect of the Fourteenth and Twenty-first Amendments to the United States Constitution on the right of the state to require a license on beer importation, holding that they did not prevent the imposition of such license.

In *Aylward* v. *State Board etc. Examiners,* 31 Cal.2d 833 [192 P.2d 929], the question before the court was whether the trial court had erroneously determined as a matter of law that no cause had been established for the revocation by the Board of Chiropractic Examiners of the licenses of certain chiropractors. In upholding the action of the trial court, the Supreme Court stated that while the procedure prescribed by statute for the granting of licenses had not been strictly followed, there was not such a substantial departure as to render the licenses void as a matter of law, and hence the board had no right to revoke them. It also held that as the applicants had acted in good faith in taking the examinations, the court should not hold their licenses to be void as a matter of law unless required to do so by compelling reasons of public policy. This case is not authority for the broad rule claimed by defendants, that an administrative rule which "violates the statute" will be upheld in the absence of a showing that the public had not been fully protected.

Defendants cite the five consolidated cases of *Hunt* v. *State Board of Chiropractic Examiners,* 87 Cal.App.2d 98 [196 P.2d 77], in which the court had before it the question of whether the provisions of the act creating the chiropractic board and fixing the *minimum* educational requirements for chiropractors excluded the right of the board, under its rule making power, to demand additional and higher standards, and to establish physical requirements. In holding that it did

not, the court stated that the rules in question were not in conflict with the statute, but that the statute gave the board the power to make such rules. This case can hardly be considered authority for the proposition that an administrative board can make a rule that is directly in conflict with the statute.

In *Mantzoros* v. *State Board of Equalization*, 87 Cal.App. 2d 140 [196 P.2d 657], where a statute was ambiguous, the court followed the interpretation given the statute by the attorney general, acted upon by the Board of Equalization and the Legislature, rather than other interpretations which could have been given. The question in the instant case is not of interpretation but of lack of power of the board to make a rule contrary to the concept of the statute.

### FINDINGS

Defendants complain that the findings failed to find on the matters set up in their answer. As we have determined that the matters set up in the answer do not constitute a defense and that the rule in question is invalid, the findings become of no importance.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied December 11, 1948, and appellants' petition for a hearing by the Supreme Court was denied January 10, 1949. Edmonds, J., voted for a hearing.