[Civ. No. 9160. Fourth Dist., Div. One. May 16, 1969.]

GEORGE WILLIAM YEOMAN, Plaintiff and Respondent, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Nicholas C. Yost, Deputy Attorney General, for Defendant and Appellant.

Robert W. Fraser and Samuel Frizell for Plaintiff and Respondent.

WHELAN, J.—The Department of Motor Vehicles (DMV) appeals from a judgment ordering, by writ of mandate, that DMV issue a school bus driver certificate to George Yeoman.

## FACTS

The facts are not disputed. On January 30, 1967, Yeoman, who held a school bus driver's certificate issued by DMV, was convicted of driving under the influence of intoxicating liquor, in violation of Vehicle Code, section 23102. On February 6, 1967, DMV received certification of that conviction from the court in which it was rendered. On February 23, 1967, DMV sent to Yeoman an appropriately worded notice of the revocation of his school bus driver certificate and the reason therefor, demanding its surrender, and informing him that he would not again become eligible for a school bus driver certificate until January 30, 1970.

We assume that Yeoman complied with the order directing him to surrender his certificate, for he applied for another on July 28, 1967. While the application was being forwarded to DMV, the California Highway Patrol erroneously gave Yeoman a temporary certificate to operate school buses. On August 1, 1967, the error having been discovered, the certificate was taken from Yeoman by the Highway Patrol. On August 17, 1967, Yeoman brought a petition for writ of mandate in the Superior Court of Orange County directing DMV to issue him a school bus driver certificate or to show cause why it should not do so. After a hearing, the petition was granted and the writ issued with directions that the appeal not operate as a stay of execution. DMV complied with this directive by mailing a school bus driver certificate to Yeoman.

## THE APPLICABLE STATUTE AND REGULATION

The gist of the trial court's decision was that the regulation of the State Board of Education (Board) barring persons convicted of drunk-driving from being licensed to drive school buses is unconstitutional.

Statutory authorization for revocation, section 16852 of the Education Code, reads in pertinent part as follows: "The State Board of Education may adopt reasonable regulations relating to the construction, design, operation, equipment, and color of school busses. . . . The regulations, if approved by the Commissioner of the California Highway Patrol, shall be enforced by the California Highway Patrol. The State Board of Education may issue an order prohibiting the operation on public streets, highways and elsewhere of any school bus which does not comply with the regulations. The order shall be enforced by the California Highway Patrol."

Section 16855 of the Education Code provides: "Any officer, agent, or employee of a school district, or any other person knowingly operating, or permitting or directing the operation of a schoolbus in violation of any regulation or order of the State Board of Education, and any person knowingly operating a schoolbus without possessing the qualifications required by the regulations of the State Board of Education for schoolbus operators, is guilty of a misdemeanor."

Pursuant to the authority conferred by section 16852, Board enacted regulations, published as sections 1072 and 1073 of title 5 of the California Administrative Code, which provide in part as follows: "Eligibility for Certificate. (a) The Department of Motor Vehicles shall deny any application for the issuance of a school bus driver's certificate made by any applicant who:

" . . . . . . . . .

"(2) Has been convicted within the three years next preceding the applicant's application for such certificate of any violation involving felony hit-and-run driving, driving while under the influence of intoxicating liquor, or reckless driving . . ."

" . . . . . . . . .

"(c) The Department of Motor Vehicles shall revoke the school bus driver's certificate of any holder who after issuance of the certificate:

"(1) Is convicted of any violation involving felony hit-and-run driving, driving under the influence of intoxicating liquor, reckless driving, or has had his driving privilege suspended or revoked by the Department of Motor Vehicles for a cause involving the safe operation of a motor vehicle . . ."

The regulations also contain provisions for discretionary denial or revocation in certain fact situations. In such cases there is provision for an administrative hearing. The rules specify that in the case of a mandatory suspension or denial under the quoted provisions, a person is not entitled to a hearing.

The Vehicle Code does not attempt to prescribe the qualifications of a public school bus operator other than in section 12516, which provides that it shall be unlawful for any person under the age of 18 years to drive a school bus transporting pupils to or from school; and in section 12522, first enacted in 1965, which requires that a school bus driver, in addition to any other requirements, shall have completed satisfactorily a course in first-aid.

Both Vehicle Code, section 545, and Education Code, section 16851, define what a school bus is.

The Vehicle Code definition is broad enough to cover not only public but private school buses and, but for the specific exception of buses operated by the University of California, a California state college or junior college, would cover buses of the latter three classes.

DMV has apparently willingly cooperated with the Board of Education in the enforcement of the latter's regulations by issuing and revoking certificates for school bus drivers in accordance with those regulations. It has done so without, so far as we have discovered, embodying its policy to that end in any set of rules made a part of the Administrative Code of the state.

No regulation adopted by Department of California Highway Patrol approving Board's rules is found in the California Administrative Code.

### BASES OF THE JUDGMENT

The grounds upon which the court rendered judgment are set out in the following written conclusions of law: "1. Respondent's action was arbitrary.

"2. Respondent did not exercise any discretion nor have any discretion to exercise in taking this action. If there were any, however, it was abused.

"3. Section 1073(c)(1) is not ambiguous.

"4. Section 1073(c)(1) is certain and intelligible.

"5. Said section 1073 is unconstitutional in that its provisions exceed the authority granted by the California State Legislature to the Department of Education to adopt and enforce reasonable rules and regulations in that section 13352 of the Vehicle Code of the State of California provides the method of suspension and revocation of driver's licenses and any attempt to add to or change a statute is in excess of such delegated authority.

"6. Said section 1073 is also unconstitutional in that it exceeds the authority granted by the Legislature to the Department of Education to adopt and enforce reasonable rules and regulations in that it provides for action by an administrative agency of the State of California for an act in no way related to the subject matter of the regulation, to wit: revocation of school bus driver certificate for an act not even remotely related with the driving of a school bus."

## SCHOOL BUS DRIVERS ARE PROPERLY GIVEN A
## SPECIAL CLASSIFICATION

We are unable to find merit in most of the arguments made by Yeoman in support of the judgment.

There is ample reason for placing school bus drivers in a distinct classification from other operators of motor vehicles.

In the licensing of school bus drivers there is good reason for imposing more rigorous standards of conduct and different standards as to character from other operators of motor vehicles.

A condition that a school bus driver's certificate to act as such be summarily revoked upon his conviction of the offense of driving while under the influence of intoxicating liquor without an administrative hearing is not the result of an unreasonable classification and is not in itself unreasonable.

For a first offense of violation of section 23102, Vehicle Code, there can be automatic suspension of an operator's license for six months, and there is to be no automatic suspension for such first violation if the trial judge so recommends. However, it was within the power of the Legislature to provide for a compulsory suspension upon such first conviction without a hearing other than that in the court in which the conviction occurred. (*People* v. *O'Rourke*, 124 Cal.App. 752 [13 P.2d 989].)

Among the many specific provisions for mandatory suspension or revocation, section 13352 provides a third conviction of a violation of section 23102, Vehicle Code, carries with it a mandatory revocation of an operator's license. (*Cook* v. *Bright*, 208 Cal.App.2d 98 [25 Cal.Rptr. 116].)

Compulsory suspension of license is provided for upon the furnishing of evidence to DMV that a judgment for damages remains unpaid and unsatisfied for 15 days after it became final. (*Watson* v. *Division of Motor Vehicles*, 212 Cal. 279 [298 P. 481]; see also as to a related point *Escobedo* v. *State of California*, 35 Cal.2d 870 [222 P.2d 1].)

A first conviction of a violation of section 23101, Vehicle Code (negligent driving while under the influence of liquor resulting in injury to the person of another), carries a compulsory suspension under section 13352.

Under section 13355, compulsory revocation is provided in the case of a minor found by a juvenile court judge to have driven while under the influence of intoxicating liquor.

The fact that in other fields business and professional

licenses are to be revoked upon proof of the conviction of a crime involving moral turpitude on the part of the licensee only after a hearing in which proof must be made of such conviction, does not establish a rule that must be followed as to every class of license. Even in those cases, the properly authenticated record of the conviction or judgment is conclusive, and the course of action upon proof thereof is prescribed.

Thus the State Bar Act, as it was in 1937, made mandatory the disbarment of an attorney whose conviction of a crime involving moral turpitude had become final, as evidenced by a certified copy of the record of conviction when received by the Supreme Court (*In re Phillips,* 17 Cal.2d 55 [109 P.2d 344, 132 A.L.R. 644]). The fact that the mandatory duty was imposed upon the judicial branch of government rather than the executive is immaterial. (Cf. *DiGenova* v. *State Board of Education,* 45 Cal.2d 255 [288 P.2d 862]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind,* 67 Cal.2d 536 [63 Cal.Rptr. 21, 432 P.2d 717].)

Because the safety of those using public highways is involved, a license to exercise the privilege of driving upon such highways is recognized as being in a special class.

We do not doubt that it was within the power of the Legislature to provide for compulsory suspension of a permit to operate a school bus upon a conviction of the permitee of the offense of driving any vehicle upon the public highway while under the influence of intoxicating liquor, and that such suspension may occur without any prior hearing other than that in the court in which the conviction occurred.

It was also within the power of the Legislature to delegate to Board the power to adopt all necessary regulations for the operation of buses for the transportation of pupils in the public schools including the imposition of special rules for the licensing of bus operators in addition to the basic requirements imposed by the general law for vehicle operators generally.

The power to adopt rules for licensing such school bus drivers carries with it the power to adopt and enforce rules for the suspension or revocation of such licenses. (*Vincent Petroleum Corp.* v. *Culver City,* 43 Cal.App.2d 511, 518 [111 P.2d 433]; *Watson* v. *Division of Motor Vehicles, supra,* 212 Cal. 279, 283.)

The argument that the Legislature has provided exclusively in section 13352, Vehicle Code, for the suspension or revocation of driving privileges because of a conviction of driving

while under the influence of intoxicating liquor is found not to be true by reference to other code sections that bear upon the subject.

Moreover, the argument overlooks the facts, firstly, that enforcement of the Board's regulations does not affect the basic privilege of operating a vehicle other than a school bus on the public highway; secondly, that the purposes and interest of Board in the adoption of its regulation are not the control of the operation of motor vehicles generally on the public highways, but undoubtedly embrace a number of considerations wholly alien to the purposes of either DMV or the Department of California Highway Patrol.

Board has adopted regulations that affect the interests of all the local boards of education in the state that may make use of buses exclusively for transportation of pupils, whether as owners or charterers. As owners and employers of bus drivers, such boards have the right to adopt standards of employment of state-wide application fixed by Board. As owners and employers, such boards have the right to protect themselves against possible liability for negligent operation of buses; they have the responsibility of safeguarding the physical, moral and behavioral well-being of the pupils whom they entrust for limited periods to the care of a bus driver.

The responsibilities of Board are in most respects the same in a situation when a bus may be chartered or hired by contract, in which case the driver might be either an employee of the school board, or of the owner under the control of the school board.

It is somewhat absurd, therefore, to say that the qualifications of a school bus driver should be only those of any licensed operator of a vehicle, or to say that DMV, which has none of the responsibilities of Board, should prescribe the sole conditions upon which a permit to operate a school bus should be issued and held.

### MEANING OF WORD "OPERATION" IN SECTION 16852, EDUCATION CODE

■ Yeoman asserts the word "operation" in section 16852 refers only to the mechanical fitness of a bus to be operated rather than to the operation of it by a driver as interpreted by Board.

Board's interpretations of statutes to be administered by a department are entitled to be accorded great weight (*Misasi* v. *Jacobsen*, 55 Cal.2d 303, 308 [10 Cal.Rptr. 850, 359 P.2d 282];

*Whitcomb Hotel, Inc.* v. *California Emp. Com.*, 24 Cal.2d 753, 756-757 [151 P.2d 233, 155 A.L.R. 405].)

Here Board's interpretation was a reasonable one. It has received judicial recognition. (*Hollon* v. *Pierce*, 257 Cal.App. 2d 468, 478 [64 Cal.Rptr. 808].)

In that respect, the Legislature has clearly given its approval to Board's interpretation by the enactment of section 12517, Vehicle Code, and section 16855, Education Code.

### SCOPE OF THE AUTHORITY CONFERRED BY SECTION 16852, EDUCATION CODE

 DMV argues that Board's interpretation of the statute as giving it authority to adopt the regulations under which DMV is directed to issue certificates for school bus drivers under conditions prescribed by Board and to revoke such certificates under conditions prescribed by Board was a correct one.

We deal here with the question of the authority of one department of the executive branch of government over another such department.

Section 11150, Government Code, provides for the division of the executive and administrative work of the executive department under the Governor into departments.

Under section 11152, Government Code, and sections 1503 and 1504, Vehicle Code, the control of DMV is in the Director of Motor Vehicles, who has power to adopt rules and regulations to govern activities of that department.

Administration of the Department of Education has been placed under Board and its executive officer. (Ed. Code, § 352; Gov. Code, § 11152.)

The question of the power of one of the departments of the executive branch over another has been considered in *Stockton* v. *Department of Employment*, 25 Cal.2d 264 [153 P.2d 741], and in *Nelson v. Dean*, 27 Cal.2d 873 [168 P.2d 16, 168 A.L.R. 467]. Both of those cases dealt with the power of the State Personnel Board to adopt rules concerning standards of employment of employees of other departments that overrode rules adopted by the department whose employees were involved. It was held that such power resided in the State Personnel Board by virtue of a constitutional grant.

Neither the Department of Motor Vehicles nor the Department of Education is of direct constitutional creation. The State Board of Education has certain powers and duties under the California Constitution (§ 7 of art. IX), but the

constitutional grant of powers does not include jurisdiction over any coordinate branch of government, such as DMV.

Since both departments and the distribution of their powers are creatures of the Legislature, it requires a legislative act to vest in one department any degree of authority over the other. Such authority could be conferred only in clear and explicit terms. No such clear and explicit language is found in section 16852, Education Code.

We may state unequivocally that section 16852 of the Education Code in its original enactment did not empower Board to make any regulation binding upon DMV.

That such an interpretation placed upon it by Board has stood for many years cannot serve to confer an original authority not expressed in the statute.

An administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative enactment. (*Whitcomb Hotel, Inc.* v. *California Emp. Com., supra,* 24 Cal.2d 753, 757.)

An erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change. (*Whitcomb Hotel, Inc.* v. *California Emp. Com., supra,* 24 Cal.2d 753, 757-758.)

The statute does specifically provide for approval of the regulations by the Highway Patrol and for their enforcement by that department. The Department of the Highway Patrol is a department of the State Government separate and distinct from DMV and with a different executive officer. (Veh. Code, §§ 2100-2107; Gov. Code, §§ 11150, 1001.)

There remains, however, the possibility that the Legislature, by subsequent action, has ratified and approved the rules adopted originally by Board in excess of its power.

It is clear such legislative approval of an administrative practice is possible (*Nelson* v. *Dean, supra,* 27 Cal.2d 873, 877). Administrative rules may be incorporated by the Legislature into law (*Lertora* v. *Riley,* 6 Cal.2d 171, 180 [57 P.2d 140]).

Where legislative approval of previously adopted administrative rules is at issue, a distinction may be made between the rule as originally adopted and as they are after implied legislative approval. (*Nelson* v. *Dean, supra,* 27 Cal.2d 873, 878.)

Such subsequent legislative action could not validate the rules as of the time of their original adoption (*Brock* v. *Superior Court,* 12 Cal.2d 605, 617 [86 P.2d 805]); and can

amount to a ratification only if the regulations are specifically referred to (*Blatz Brewing Co.* v. *Collins*, 88 Cal.App.2d 438, 448 [199 P.2d 34]).

The regulations under attack were adopted as long ago as 1953.[1]

In 1959, the Legislature enacted section 16855, Education Code, which declares it to be a misdemeanor to operate "a schoolbus in violation of any regulation or order of the State Board of Education" or "without possessing the qualifications required by the regulations of the State Board of Education for schoolbus operators." That section derived from earlier legislation with the same subject matter; as subsequently amended it is still the law.

Vehicle Code, section 12517, enacted in its present form in 1961, had its inception in similarly worded legislation first enacted in 1958. It is as follows: "No person shall operate a schoolbus in the transportation of pupils to or from a private school unless such person holds a valid driver's license and a schoolbus driver's certificate issued by the department under the same standards and requirements as are applied to public schoolbus drivers at the time of issuance of the certificate."

Thus there is in both the Education Code and the Vehicle Code explicit recognition and approval of the then existing regulations governing the qualifications of bus drivers and the issuance of certificates to them.

We have noted that DMV has not attempted by any regulation found in the Administrative Code correlative definition

---

[1]Administrative Code, title 5, section 1078 (printed August 22, 1945) provided that to be a school bus driver one must have a school bus certificate issued by the Department of Motor Vehicles. This certificate was to be issued subject to suspension or revocation at any time "for cause . . . ." California Administrative Register No. 15, dated January 22, 1949, added a section 1079, which stated, inter alia, that the Department of Motor Vehicles shall not issue a school bus driver's certificate to one who within three years had been convicted of drunk driving. In 1953 the immediate predecessor to the present section 1073(c)(1) was adopted. This section 1079.2(c)(1), title 5, California Administrative Register 53, No. 20 (dated November 14, 1953), is substantially identical to the present 1073(c)(1) and provided that the Department of Motor Vehicles shall revoke the school bus driver's certificate of one convicted of drunk driving. Immaterial amendments were thereafter adopted. Cal. Admin. Reg. 55, No. 6 (April 30, 1955); Cal. Admin. Reg. 59, No. 8 (May 30, 1959); Cal. Admin. Reg. 60, No. 6 (March 19, 1960); Cal. Admin. Reg. 60, No. 12 (May 21, 1960); Cal. Admin. Reg. 60, No. 21 (October 15, 1960); Cal. Admin. Reg. 61, No. 22 (November 11, 1961). In 1964, section 1079.2(c)(1) was renumbered and substantially reenacted as the present section 1073(c)(1). Cal. Admin. Reg. 64, No. 15 (July 18, 1964). An immaterial amendment was made in 1967. Cal. Admin. Reg. 67, No. 16 (April 22, 1967). The section now appears as title 5, California Administrative Code, section 1073(c)(1).

of its functions in the scheme of issuing certificates to school bus drivers.

It has, however, acquiesced in the scheme by which it issues such certificates in cooperation with Board; and by enforcement of such a rule may be said to have established it without formally adopting it. (*Nelson* v. *Dean, supra,* 27 Cal.2d 873, 877.) If Department of California Highway Patrol has not formally approved the regulations adopted by Board, it similarly has in practice approved them; and, as noted, the Legislature, which provided for approval by the Highway Patrol, has itself approved the regulations.

The area of administration is one in which there may necessarily be an overlapping of departmental jurisdiction. DMV is chiefly concerned with the physical and mental capacities and the skill of those that operate motor vehicles upon public highways. ■ While Board likewise is concerned with those matters so far as they affect school bus operators, it is also properly concerned with the character of those placed in daily contact with the pupils for whose physical welfare subordinate school boards are responsible as owners of buses and employers of bus operators and for the safeguarding of whose moral welfare such boards likewise are concerned.[2]

Board, therefore, may properly require in school bus oper-

[2]For other examples of departments acting in dual or overlapping capacities, see: *State* ex rel. *Goddard* v. *Coerver,* 100 Ariz. 135 [412 P.2d 259]; *New Jersey Pharmaceutical Assn.* v. *Furman,* 33 N.J. 121 [162 A.2d 839]: ''We need not consider what the legal consequences would have been if objections had been voiced by any of the boards or what the legal consequences will be if one of the boards hereafter seeks to set aside the Attorney General's action, for those cases are not now before us for adjudication. For present purposes we need only determine that, in acting as he did with the consent or acquiescence of the boards in the Division of Professional Boards, the Attorney General did not exceed his authority or violate any statutory provision or any legislative design bearing upon the generally autonomous nature of the boards within the Division of Professional Boards.'' (P. 844.)

*Book* v. *State Office Bldg. Com.,* 238 Ind. 120 [149 N.E.2d 273]: ''Since a Treasurer and Custodian of the funds of the Commission is necessary to carry out the provisions of the Act, this section is sufficient to authorize and empower the Commission to appoint the Treasurer of State, with his consent, or any other person, as Treasurer of the Commission with such duties as are necessary to carry out the relevant provisions of the Act.'' (P. 293.)

*Consolidated Edison Co. of New York* v. *Moore,* 277 App.Div. 245 [98 N.Y.S.2d 973]: ''Article V, § 2 of the Constitution prescribes that there shall be nineteen departments of the State government, including the Department of Taxation and Finance. However, neither that section nor any other in the Constitution prescribes the duties, powers or functions to be performed by that Department. Those matters are left entirely in the discretion of the Legislature. While the Legislature is under obligation to 'provide for the supervision, review and equalization of assessments for purposes of taxation' (Article XVI, § 2) neither by reason

ators qualifications of good character and higher standards of driver performance than those imposed for the issuance of general operators' licenses.

In this area of conflicting demands, the two departments have wisely decided upon a cooperative adjustment by which DMV issues certificates upon standards partly of its own creation and partly the creation of Board.

The rules and procedures have received express legislative recognition and approval which has served to ratify the rules as they existed at the time of such approval. From that time forward the then existing rules must be considered as valid and binding.

One of those rules prescribes the life of a certificate as two years. Yeoman's certificate, therefore, could have been issued only since the legislative approval of the rules.[3]

The judgment is reversed with directions to the trial court to enter judgment in favor of DMV.

Brown, P. J., and Coughlin, J., concurred.

---

of that command nor by reason of any other constitutional compunction is the Department of Taxation and Finance vested with those or any other particular administrative responsibilities. None of such responsibilities now or heretofore performed by that Department is beyond the province of the Legislature to eliminate, extinguish, abolish, transfer or assign to other administrative agencies of the State government.'' (P. 977.)

[3]Section 1070 of the rules provides in part as follows: ''No person shall be employed by, or act as a school bus driver for any school district or any other party transporting public school pupils unless such person holds a valid driver's license of appropriate class and a school bus driver's certificate issued by the Department of Motor Vehicles. The school bus driver's certificate shall be issued only to applicants qualified by an examination prescribed by the DMV. . . . Such certificate shall be valid for not to exceed two years.''