[Civ. No. 12779.   First Dist., Div. One.   June 22, 1945.]

BLATZ BREWING COMPANY (a Corporation) et al., Appellants, v. R. E. COLLINS et al., Respondents.

Athearn, Chandler & Farmer, Hoffman & Angell, Walter Hoffman, Philip H. Angell and M. J. Donnelly for Appellants.

Robert W. Kenny, Attorney General, and Carl W. Wynkoop and J. Albert Hutchinson, Deputies Attorney General, for Respondents.

BRAY, J. pro tem.—Plaintiffs brought this action for injunction and declaratory relief against the members of the State Board of Equalization to obtain an adjudication that rule 55 of that board applying to out-of-state manufacturers of beer shipping their products into California is void. The lower court sustained the defendants' demurrer to the complaint without leave to amend, and thereafter entered a judgment of dismissal. From this judgment the plaintiffs have appealed.

The principal contentions of plaintiffs are:

1. The State Board of Equalization (hereinafter referred to as the "board"), had no authority under the provisions of the Alcoholic Beverage Control Act [Stats. 1935, p. 1123; as amended; Deering's Gen. Laws, Act 3796] (hereinafter referred to as the "A. B. C. Act"), to adopt the regulation in question. 2. If such authority exists, the regulation itself is, (a) unconstitutional, and (b) discriminatory.

Six of the seven companies plaintiff are manufacturers of beer outside California. The seventh plaintiff, Pabst Sales

Company, is the sales company in California for plaintiff Pabst Brewing Company. Plaintiffs Blatz Brewing Company, Adolph Coors Co. and P. Ballantine & Sons, each holds an importer's and wholesaler's license issued pursuant to the provisions of the A. B. C. Act and sells its own products in this state. Plaintiffs Joseph Schlitz Brewing Company and Theo. Hamm Brewing Company transact no business directly in California; they manufacture and sell beer outside the state to independent beer importers and wholesalers, duly licensed in California, who in turn sell the beer here.

On May 27, 1941, after a hearing and pursuant to a notice, which stated that the notice was given pursuant to the provisions of section 38e of the A. B. C. Act, the board adopted the following rule or regulation:

"On and after July 1, 1941, no beer wholesaler nor beer importer shall purchase any beer not manufactured within the State of California by a manufacturer holding a license as a beer manufacturer from the State of California, or transport or cause the same to be transported into the State of California for resale therein, unless the manufacturer of such beer has obtained from the board and holds a valid unrevoked and unsuspended certificate of compliance. A certificate of compliance shall be granted when such manufacturer of beer shall have made a written agreement with the board to furnish to the board, on or before the fifteenth day of each month, a report under oath, on a form to be prescribed by the board, showing the quantity of beer sold or delivered by such manufacturer to each licensed beer importer in this State during the preceding month and shall further have agreed with the board, that such manufacturer of beer and all general sales corporations or agencies owned and maintained by it shall and will faithfully comply with all laws of the State of California pertaining to the sale of alcoholic beverages and all rules and regulations of the board. If any such manufacturer of beer shall, after obtaining such certificate, fail to submit such report, or if such manufacturer or general sales corporation or agency owned and maintained by it shall violate the terms of such agreement, the board may suspend or revoke the certificate of compliance in the manner provided by the Alcoholic Beverage Control Act for the suspension or revocation of licenses, and after a hearing which shall be held in the City

of Sacramento or in such other county seat in this State as the board determines to be convenient to the holder of the certificate. No fee shall be charged for such certificate of compliance but same must be renewed annually on or before July 1st of each year hereafter."

It will be noted that this rule provides: (1) that no beer wholesaler or importer in California shall purchase or bring into California beer manufactured outside the state unless the manufacturer of such beer holds the valid unrevoked and unsuspended certificate of compliance provided for in the section; (2) such certificate of compliance will only be granted if the out-of-state beer manufacturer agrees with the board in writing, (a) to make to the board a monthly report of beer sold to California importers; (b) that such manufacturer and all general sales corporations or agencies owned or maintained by it, will faithfully comply with all California laws pertaining to the sale of alcoholic beverages and also all rules and regulations of the board; and (3) that, for failure to file the required reports, or violating the terms of the agreement, the board may suspend or revoke the certificate of compliance, after hearing in the manner provided by the A. B. C. Act for suspension or revocation of licenses.

The question of the authority to adopt rule 55 primarily depends upon the question as to whether or not the so-called "certificate of compliance" is a license. The defendant board concedes that the A. B. C. Act gives the board no authority to require an out-of-state beer manufacturer to obtain a license in order that its beer may be sold in this state. The board contends that rule 55 is an administrative regulation and not a grant of authority or permission to perform designated acts, as is a license. Plaintiffs contend to the contrary. This is the crux of the case.

Webster's New International Dictionary defines "regulation" as "A rule or order prescribed for management or government; a regulating principle; a governing direction, precept, or law"; and "rule" in law, as "An order or direction made by a court, usually in writing, regulating court practice (general rule) or regulating the action of parties in special cases (special rule)." A "rule" is "a definite regulation prescribed by the law for the conduct of trials." (*Watts* v. *Holland*, 56 Tex. 54.) Webster defines "license" as "Authority or liberty given to do or forbear any act; per-

mission to do something (specified) ; esp., a formal permission from the proper authorities to perform certain acts or to carry on a certain business which without such permission would be illegal. . . .''

License means leave to do a thing which licensor could prevent. (*Western Electric Co.* v. *Pacent Reproducer Corporation,* 42 F.2d 116, 118.)

The word ''license'' generally speaking, means a grant of permission to do a particular thing, to exercise a certain privilege, or to carry on a particular business or to pursue a certain occupation. (*San Francisco* v. *Pacific Tel. & Tel. Co.,* 166 Cal. 244 [135 P. 971].)

Rule 55 patently does more than establish a rule or regulation for the governing of the actions of out-of-state beer manufacturers. It requires that such manufacturers obtain a license, called, it is true, a certificate of compliance, but a license nonetheless, in order that their beer may be legitimately sold here. It provides that such license may be taken away for violation, not alone of the regulation that reports of sales must be filed, but for violation of any regulation of the board, or any alcoholic beverage law of the state. The board claims as its authority for adopting rule 55 the following provision of section 38e of the A. B. C. Act: ''The board may adopt such other rules and regulations as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer; . . .'' Defendants take the position that rule 55 fosters and encourages the orderly wholesaling and distribution of beer in California, for the reason, as set forth on page 24 of respondents' reply brief, that it ''prevents foreign manufacturers from underselling domestic manufacturers of beer and forcing domestic manufacturers to meet low competitive markets of foreign manufacturers,'' and call attention to section 2 of the Twenty-first Amendment to the federal Constitution, which grants to the states the power and authority to regulate the importation of intoxicating liquors from one state to another. This argument of defendants is one of the strongest proofs that the board is legislating rather than administrating. The Legislature in no way attempted in its long and complete scheme of alcoholic beverage control as set forth in the A.B.C. Act to discriminate between out-of-state beer, and in-state beer, **nor attempted** to prevent, again,

in the words of appellants' brief, foreign beer manufacturers from flooding the California market with their product. Nor is the situation changed by the fact that the only manufacturers' licenses provided for by the act are limited to in-state manufacturers. It is very apparent from the completeness of the act itself that the Legislature, for its own reasons, did not desire to require out-of-state manufacturers to obtain a license or a permit to send their product into California.

Rule 55, attempting to regulate out-of-state beer manufacturers, prescribes a license. That it is such is shown by the terms of the regulation: 1. The products of the out-of-state manufacturer cannot be sold, purchased or transported in California unless it holds a valid, unrevoked and unsuspended certificate of compliance. 2. If the manufacturer violates any regulation or law the board may suspend or revoke the certificate. 3. The certificate must be renewed annually. What the writing required to be obtained is called is immaterial. *Wilkie* v. *City of Chicago*, 188 Ill. 444 [58 N.E. 1004, 80 Am. St.Rep. 182], points out that there is no distinction in substance between a license and a certificate. "The certificate, by express terms, authorizes the recipient to engage in the business of plumbing. A certificate or paper having that effect is a license, which, in its general sense, is an authority to do something which, without such authority, is prohibited. Webster defines a license to be a formal permission from proper authorities to perform certain acts or carry on a certain business, which, without such permission, would be illegal. The certificate is within that definition, and is a license." The license feature of the certificate is not affected by the fact that the rule does not directly require the out-of-state manufacturer to obtain the certificate, but requires it indirectly, by providing that unless such manufacturer has the certificate, no beer wholesaler or importer in California can transport the manufacturer's beer into the state for resale here. Although denominated a "certificate of compliance" it is actually a license. Without it, the manufacturer cannot send its products into the state. 4. The regulation provides that the certificate may be suspended or revoked "in the manner provided by the Alcoholic Beverage Control Act for the suspension or revocation of licenses."

An examination of the A. B. C. Act shows that the Legislature very comprehensively covered the entire field of alco-

holic beverage control and licensing in California. The act provides twenty-four different types of licenses. It is significant that the basic theory of the act is to make the licenses locational rather than personal. Section 6 of the act provides that the licenses provided for in the act shall authorize the person to whom the license is issued to exercise the rights and privileges of his license "at the premises for which issued." Rule 55 of the board, on the other hand, attempts to provide a license not contemplated by the act, and one attached to the individual rather than to the location.

The Legislature in framing the act did not see fit to provide a license for out-of-state manufacturers of beer, although it did provide for licensing in-state manufacturers. The board by rule 55 does attempt to do this, and in the words of defendants' brief, "Should the board attempt to add additional types of licenses, it would in effect usurp the power of the Legislature."

The law as to administrative bodies is concisely set forth in *American Distilling Co.* v. *State Board of Equalization,* 55 Cal.App.2d 799, where the court says (pp. 805-806) [131 P.2d 609]: "It is true that the Legislature may delegate authority to administrative boards to adopt and enforce reasonable rules for carrying into effect the expressed purpose of a statute even though such rules include the authorization to exercise discretion in doing so, provided that discretion is not purely arbitrary and does not amount to a sanction to add to or change the statute or confer upon the board a right to determine what the law shall be in a particular case. . . . It is a well-established principle of law that the Legislature may not delegate authority to a board or commission to adopt rules which abridge, enlarge, extend or modify the statute creating the right. (*Campbell* v. *Galeno Chemical Co.,* 281 U.S. 599 [50 S.Ct. 412, 74 L.Ed. 1063, 1069]; *People* v. *Kuder,* 93 Cal.App. 42, 51 [269 P. 198, 630]; 11 Am.Jur. 955, § 240.) In the authority last cited it is said:

" 'Clearly, the legislative body must declare the policy of the law and fix some kind of legal principles which are to control in given cases. It must provide an adequate yardstick for the guidance of the executive or administrative body or officer empowered to execute the law. . . . In all cases the rules and regulations may be tested in the courts to determine

whether they are reasonably directed to the accomplishment of the purposes of the statute under which they are made. Moreover, regulations promulgated by administrative departments may not extend the statute or modify its provisions.' ''

Applying the test of the decision in that case to the facts here, we find that the Legislature provided no yardstick for the regulation of out-of-state beer manufacturers in the manner attempted by the board, other than that it obviously appears from the whole act that the Legislature figured that the entire subject was covered or was to be left unregulated. Moreover, rule 55 definitely attempted to enlarge and extend the statute, which is beyond the power of the board. *Tux Ginger Ale Co., Ltd.* v. *Davis*, 12 Cal.App.2d 73 [54 P.2d 1122], held that the authority of the board under the A. B. C. Act to make rules and regulations limited the board to making such rules and regulations pursuant to the provisions of the act, and did not authorize it to extend the definition of "wines," as set forth in the act, to include a liquor containing wine, alcohol, flavoring and water.

Not only does rule 55 require a license not contemplated by the Legislature itself, but it provides a penalty additional to and different from the penalties provided in the act, since it outlaws the product, rather than preventing the operations of the licensee at a particular premise only. The cases cited by respondents as authority for the proposition that section 38e of the A. B. C. Act authorizes the adoption by the board of rule 55 do not support their contention. In fact, those that are in point support the contention of the plaintiffs. *Premier-Pabst Sales Co.* v. *McNutt*, 17 F.Supp. 708; *Ziffrin, Inc.* v. *Reeves*, 308 U.S. 132 [60 S.Ct. 163, 84 L.Ed. 128]; *Joseph S. Finch & Co.* v. *McKittrick*, 305 U.S. 395 [59 S.Ct. 256, 83 L.Ed. 246]; and *Mahoney* v. *Joseph Triner Corp.*, 304 U.S. 401 [58 S.Ct. 952, 82 L.Ed. 1424], were concerned with the constitutionality of the legislative acts themselves, not with the question of the authority under such acts of the administrative boards.

Respondents place great emphasis upon the decision in *Dugan* v. *Bridges*, 16 F.Supp. 694, because there was involved in that case in New Hampshire a "certificate of approval" which was almost identical in terms and effect with the "certificate of compliance" in our case. However, section 26 pro-

viding for the certificate of approval, was not a section of rules or regulations of the State Liquor Commission but was a section of the act of the Legislature providing for liquor control. The court in that case held that the Legislature was within its constitutional power in passing that act and requiring out-of-state brewers to obtain such a certificate and pay a fee therefor. Nowhere in the case is there any discussion of the question involved here, the authority of a board to make such a requirement.

*Anheuser-Busch* v. *Walton*, 135 Me. 57 [190 A. 297-301], was a case similar to the one at bar. There, certain regulations of the Maine State Liquor Commission were challenged by out-of-state brewers as being beyond the power granted by the Legislature to the commission. These regulations required the out-of-state manufacturers and wholesalers to obtain a certificate very much like the one in question here, called a "certificate of approval." A fee was charged therefor. Certain reports, similar to those required by rule 55, were required. Just as in our case, the failure to obtain or hold the certificate was punished indirectly, by prohibiting any in-state license holder from handling or selling the products of a non-certificate holder. In holding that the Maine Legislature in its beverage control act did not grant the commission any authority to make the regulations in question (although the act did authorize the commission "To adopt rules and regulations for the administration of this act and for the supervision and regulation of the manufacture, sale and transportation of malt beverages throughout the state"), the court said, (p. 301 [190 A.]) : "No principle is more firmly embedded in our concept of government than that the laws under which we live shall be enacted by the people or by their representatives in Legislature assembled. . . . By adherence to this principle we have been saved from the tyranny consequent on the promulgation of executive edicts, by which the liberties of peoples in other lands have been destroyed, and have established here in the apt phrase of the declaration of rights of the Commonwealth of Massachusetts 'a government of laws and not of men.' " (P. 302 [190 A.]) "Nowhere in the statutes relating to this subject is there the slightest indication that the Legislature even attempted to give to the State Liquor Commission the authority which it now claims to have. Its

power to make rules and regulations extends only to such details of administration as are necessary to carry out and enforce the mandate of the Legislature." The court (p. 302 [190 A.]) comments upon the fact that ". . . this regulation was promulgated in spite of the fact that . . . the Maine Legislature refused to pass an amendment to Public Laws 1935 . . ." the purpose of which was the same as that of the regulation. This language is significant in view of the fact that rule 55 is practically the same, word for word, as a legislative bill vetoed by the Governor, in April, 1941, just a month before it was adopted by the board.

Then, there is *Zukaitis* v. *Fitzgerald,* 18 F.Supp. 1000, which, like the Anheuser-Busch case, is cited by defendants. In that case, two main questions were involved, one, the constitutionality of a section of the Michigan Liquor Control Act, and the other, certain regulations of the commission created by that act. The court held that although both the act and the regulations imposed discriminatory burdens upon out-of-state liquors, nevertheless, the Twenty-first Amendment to the federal Constitution permitted these. The second question arose as to the power of the commission under the act. Said the court (p. 1004): "We do not, however, find ourselves in accord with defendants' contentions that . . . the Michigan Constitution vests the Michigan Liquor Control Commission with complete authority over the alcoholic beverage traffic except where expressly limited by statute. The commission is, in fact, exercising legislative, executive, and judicial powers. Such exercise of power contravenes the fundamental theory of our Republican form of government. . . . One of the chief merits of the American system of written Constitutions is the separation of the powers of government." The court then goes on to hold that it was the intention of the Michigan Liquor Control Act to give the commission powers as an administrative agency to regulate modes of procedure within the terms of the act, but not to make rules or regulations which change statutory provisions. It then holds that certain of the commission's regulations are beyond the authority of the act, while others are within its authority. One of these latter was a rule requiring out-of-state brewers to obtain a license. But the court's decision was based upon what it terms the broad language of the act, which said: "Except as by this act otherwise provided, the commission shall have the sole right, power

and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within the state of Michigan, including the manufacture, importation, possession, transportation and sale thereof.'' In the Alcoholic Beverage Control Act there is no such broad delegation of power. The board, itself, does not claim any such broad delegation. It rests its sole claim of authority on section 38e.

In considering whether or not section 38e confers authority upon the board to adopt regulations on subjects other than beer prices, it is of some value to consider the construction which the board itself placed upon the section when in 1941, it issued and distributed a publication which it entitled ''California Alcoholic Beverage Control Act and Related Constitutional Provisions.'' In this publication, each section of the act is preceded by a heading which indicates its context. Section 38e is designated ''Beer Price Posting.'' Since the question here is solely one of statutory construction, it is also interesting to note the framework of the act as devised by the Legislature. The only section of the act which appears to give over-all authority to the board is section 38, which states: ''The board shall administer all of the provisions of this act and to that end shall prescribe all necessary rules and regulations to carry out such provisions. For the performance of its duties the board shall have the power conferred by section 353 of the Political Code.'' It is conceded that section 38 does not provide the authority for the board to adopt rule 55, as it is restricted solely to authority for the purpose of administering and carrying out the provisions of the act. Then, there are a number of places in which the act authorizes the board to adopt regulations in connection with specific subjects mentioned in a particular section; thus rules and regulations are authorized in section 4 in connection with sale of a stock of liquor after revocation or surrender of a license; section 5, in connection with proportionate license fee for a fractional year; section 6 (k), in connection with the sale of warehouse receipts by wholesalers; section 6 (r), in connection with sales to nonlicensees within government reservations or parks; section 6.5, in connection with giving away samples; section 21, in connection with hearing of protests; section 22a, in connection with annual reports of wine manufacturers; section 23b, in connection with claims of exemption from tax; section 38e, in connection with beer price posting. Thus we have an act containing one general section, and ten sections in which

the Legislature conferred specific authority upon the board to adopt regulations with respect only to the restricted subject of each respective section. This is the systematic pattern of the act. It grants only limited authority in the case of specific subjects. There can be no greater reason for holding that the authority to adopt rules and regulations in section 38e is not limited to the context of that section, than of holding that the same is true of the other nine sections.

This section was before this court in the case of *Adolph Coors Co.* v. *Corbett*, (Cal.App.) 123 P.2d 74. While that case is no longer authoritative, as a hearing was granted in the Supreme Court, and then the case was dismissed by the parties, its analysis of section 38e and its conclusion as to the effect of the language in that section, upon which defendants here base their entire case, are logical, persuasive and correct. In that case the board had passed a regulation prohibiting the sale in California of beer in eight ounce containers. The board, as here, based its right to adopt such rule on that portion of section 38e which reads: "The board may adopt such other rules and regulations as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer." The court, after an exhaustive examination of every provision of the act found: first, that the Legislature had so well covered the field, and yet had remained silent upon the question of a minimum beer container, as to indicate that it did not desire a minimum to be prescribed; therefore, any rule of the board constituted " 'legislating' upon a subject with respect to which the law-making body in its wisdom had seen fit to remain silent" (p. 78 [123 P.2d]) ; and, secondly, that section 38e is limited to matters having to do with "the stabilization of the wholesale prices" (p. 79 [123 P.2d]) of beer. The court discusses section 38e as follows: "As already pointed out, the respondents rely upon section 38e of the act. That being so, an examination of that section is in order. Section 38e was added to the act in 1937 (pp. 2159-2161). It is lengthy and is broken up into six paragraphs. By this section each manufacturer, importer and wholesaler of beer is required to file and thereafter maintain on file with the board a written schedule of his sale prices for beer sold in this state; such schedules may be changed from time to time by filing new ones. The first schedule becomes effective immediately; the amendatory ones become effective ten days after being filed. Then there is a proviso with respect to the filing

of schedules 'to meet lower posted and filed competing prices in a trade area' and provision, in such cases, as to effective dates. Such price schedules, the section says, are subject to public inspection and are in no sense confidential. Upon the filing of these schedules—original or amendatory—'all prices therein stated shall be strictly adhered to by the filing licensee and any departure or variance therefrom . . . shall constitute and be a misdemeanor.' There are two provisions vesting the board with power to prescribe the form of the schedules. The section then goes on to provide that 'Any director, officer, agent or employee of any licensee who knowingly assists or aids in the violation of this section or any effective posted price or any rule or regulation of the board passed to carry out the provisions of this section shall be guilty of such violation equally with the licensee.' Then follows the paragraph authorizing 'other rules and regulations' quoted above, which is followed by another paragraph, again dealing with prices and marketing, reading as follows: 'No manufacturer, importer or wholesaler mentioned in this section shall be prohibited the right of choice of customers, nor shall any such licensee be prohibited from dividing his customers into functional classes and establish different prices for the same articles for such different functional classes, such different functional classes being based upon the manner in which such classes sell beer, as wholesaler or retailer.' The succeeding paragraph sets up the machinery for court action by any trade association to enjoin violations 'of this section,' with damages as well. The last paragraph provides safeguards for the licensee against the revocation of his license for 'a violation of the provisions of this section.'

"From the foregoing review of section 38e it will be seen that what the legislature dealt with therein was the wholesale selling price of beer; the publication of prices; the maintenance of such prices and strict adherence to them. Immediately following a penal provision designed to prevent the 'violation' of effective posted prices is found the language relied upon to support rule 35a, viz., 'The board may adopt such other rules and regulations as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer. . . .' A reading of section 38e shows that the preceding and succeeding parts of that section do, in fact, deal with 'the orderly wholesale marketing and wholesale distribution of beer.' On behalf of the appellant it is argued that when, in

the middle of this section, the legislature speaks of 'other rules and regulations' the word 'other' must be limited to wholesale marketing and distributing practices of the same kind, to wit, relating to prices, price cutting, meeting competitive prices and adequate disclosure of prices. Rules and regulations were mentioned in the earlier part of the section in connection with a specific subject—the filing of price schedules, therefore, it is not at all surprising to find provision for 'other rules and regulations' later on in the same section. The interpretation for which appellant contends finds support in the fact that that part of the section next following the rules and regulations provision continues to deal with the subject of prices, price discrimination and different prices for customers in different functional classes. In short, that part of section 38e upon which the respondents rely to support a rule dealing with the size of containers finds itself sandwiched in between two provisions dealing with price stabilization, a subject utterly foreign to that of the size of containers. As already noted, the general grant of the rule-making power is found in section 38, yet the respondents do not rely upon that section, and section 53.6 which does deal with the size of containers is utterly silent with respect to rules and regulations. 'The doctrine of "ejusdem generis" simply means that where general and specific words, relating to the same things are associated together, they take color from each other, and the general words are restricted to a sense analogous to that of those less general.' (23 Cal.Jur., 755, section 130.) We are satisfied that that doctrine applies in this case and that the language found in section 38e was not designed to authorize such a rule as 35a, but must be confined to such rules for 'the orderly wholesale marketing and wholesale distribution of beer' as have to do with the stabilization of the wholesale prices of that beverage.''

Certainly in the case at bar, in view of the very extensive scheme of licensing provided by the act, and the silence of the act upon the question of licensing out-of-state beer makers, the adoption by the board of rule 55 was legislating upon a subject with respect to which the law-making body in its wisdom had seen fit to remain silent. Moreover, the regulation in question was not a rule for ''the orderly wholesale marketing and wholesale distribution of beer,'' having ''to do with the stabilization of the wholesale prices of that beverage.'' It was admittedly done, as stated in respondents' brief, to pre-

vent flooding the California market with outside beer in competition with the local product. Whether such a purpose is necessary or advisable is one for the Legislature to determine and to legislate against, not for an administrative body, such as the board.

We do not have here a situation where the Legislature has provided (as with the twenty-four types of license set forth in the A. B. C. Act), a method of licensing by the board, in which the act of licensing would be administrative, but one where the board itself has attempted the legislative act of requiring a license not contemplated by the Legislature. In administering the twenty-four licenses prescribed by the A. B. C. Act the board is acting administratively, but in setting up a new type of license the board is acting legislatively. This is another of those situations frequently met with today in which administrative boards feel called upon not merely to administer the act under which they are created, or to carry on the powers delegated to them, but to assume additional powers, and to attempt to assume authority which cannot be delegated to them, because of the rule that ". . . power conferred upon the Legislature to make laws cannot be delegated to any other authority." (Cooley's Constitutional Limitations, vol. 1, pages 228-230.) Defendants attempt to invoke the rule set forth in the same authority, pages 231-232, "Though legislative power cannot be delegated to boards and commissions, the Legislature may delegate to them administrative functions in carrying out the purposes of a statute and various governmental powers for the more efficient administration of the laws." In order to come within this rule, the board admittedly and necessarily must deny that rule 55 constitutes the imposing of a license requirement, but such a denial is fallacious. Without the certificate of compliance, the out-of-state manufactured beer cannot legally be imported into the state: first, because no licensed importer or wholesaler could sell such beer in California; and secondly, because under section 49, beer can only be brought into this state by common carriers and only when consigned to a licensed importer, and to the premises of such licensed importer. A carrier would be guilty of a misdemeanor if it transported such beer into the state.

To sum up, rule 55 is void, because, (1) section 38e of the A. B. C. Act, the claimed source of authority for the rule, is restricted solely to the subject matter of the section and does

not authorize the board to adopt such a rule; (2) the rule is contrary to the entire concept and theory of the act; (3) the rule prescribes a type of license and a theory of liquor control fundamentally different from those contemplated by the act; and (4) the rule provides a penalty additional to and different from the penalties provided by the act.

In view of the decision as to lack of authority in the board to adopt rule 55, the other questions raised on the appeal concerning the alleged unconstitutionality of the regulation and its being discriminatory, become unimportant and need not be considered.

The complaint states a cause of action and the demurrer should not have been sustained. The judgment dismissing the action is reversed, and the lower court is instructed to overrule the demurrer to the complaint, giving the defendants a reasonable time to answer.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied July 21, 1945, and respondents' petition for a hearing by the Supreme Court was denied August 16, 1945. Gibson, C. J., Shenk, J., and Spence, J., voted for a hearing.