[L. A. No. 27411.   In Bank.   Nov. 25, 1964.]

BEKINS VAN LINES, INC., et al., Plaintiffs and Respondents, v. STATE BOARD OF EQUALIZATION et al., Defendants and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, and Dan Kaufmann, Assistant Attorney General, for Defendants and Appellants.

Gibson, Dunn & Crutcher and John L. Endicott for Plaintiffs and Respondents.

SCHAUER, J.*—Defendants appeal from a judgment for plaintiffs in this action for refund of California motor vehicle transportation license taxes paid under protest. The taxes involved were levied by defendant State Board of Equalization on plaintiffs' gross receipts from certain of their operations which defendant claims were subject to such taxes. The mooted operations fall into three categories: storage in transit, handling in connection therewith, and intracity transportation to and from storage in transit.[1] As will appear, we have concluded that the judgment should be reversed with respect to receipts from certain of the handling charges, but affirmed otherwise.

The facts were stipulated and are not in dispute. Plaintiff Bekins Van & Storage Co., a corporation, is engaged in the business of storing household goods and the local moving thereof. It owns warehouses for use in its storage operations. Plaintiff Bekins Van Lines, Inc., a corporation, is a wholly owned subsidiary of Bekins Van & Storage Co., and is engaged in long distance moving of such goods in intrastate and interstate commerce. It does not own a warehouse or storage facilities.

The particular provisions of the Motor Vehicle Transportation License Tax Law (Rev. & Tax. Code, §§ 9601 et seq.) which are here pertinent are found in sections 9651, 9603, subdivision (a), 9606, and 9653.[2]

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

[1]"Storage in transit" is defined by the parties as the holding of goods in the warehouse of a carrier or its agent, for storage, pending further transportation.

[2]Section 9651 provides that "operators" must pay a license tax of a specified percentage of "the gross receipts of the operators from operations."

Section 9603, subdivision (a), declares that "Operator" includes "Any person engaging in the transportation of persons or property for hire or compensation by or upon a motor vehicle upon any public highway in this State, either directly or indirectly."

Section 9606 specifies that " 'Gross Receipts' include all receipts from transportation operations entirely within this State and a proportion, based upon the proportion of the mileage within this State to the entire mileage over which such operations extend, of the receipts from operations passing through, into, or out of this State, or partly within and partly without this State. . . ."

Section 9653, subdivision (b), provides that "The tax does not apply to the gross receipts derived from the transportation of persons or property wholly within incorporated cities or between incorporated cities or incorporated cities and private property or wholly on private property where no portion of the public highway outside the corporate limits of the cities or private property is traversed in such operation."

During the period of some three years (1955-1958) here involved, plaintiffs frequently transported household goods for customers who were moving from a former residence in one city to a new residence in some other city. Storage in transit in a Bekins warehouse was provided in either the city of origin or in the city of destination and is usually required because the customer has not yet found or is unable to take possession of the new residence. The storage in transit involved in this case occurred in various California cities; in some instances the customer was moving *to* such city and in other instances he was moving *from* it. In each instance the charges made to the customer included charges for storage in transit, charges for warehouse handling[3] in connection with storage in transit, and charges for pickup and delivery from or to storage in transit.

Each owner's goods were transported pursuant to (1) a service order which recited that the rate of charge was the "Storage in Transit Rate" and also referred to the specific tariff under which the transportation was to be performed; and (2) a through bill of lading which recited the charges for storage in transit and for warehouse handling in connection with such storage. Plaintiffs paid the California transportation taxes on their gross receipts derived from transporting the goods on California highways from the warehouse in the city of origin, or to the warehouse in the city of destination, as the case might be, but paid no such tax on their receipts for storage in transit, for warehouse handling, or for delivery between the residence (whether former or new) and the warehouse.

The following illustrates a typical instance which gave rise to the gross receipts here in dispute. A customer of Cleveland, Ohio, who wished his household goods moved to Los Angeles, California, entered into an agreement with Bekins entitled "Order for Service," on which was entered the transportation "rate per cwt. between points named." Because the customer did not expect to be able to accept the goods promptly when they arrived in Los Angeles, he ordered storage in transit, and the rate of charge therefor was separately stated on the service order. After completion of the service order plaintiffs picked up the goods and the truck driver took an inventory thereof and delivered a copy to

---

[3] I.e., carrying the goods from the warehouse loading dock into the warehouse and out again after storage.

the customer. The load was weighed somewhere en route to Los Angeles and the weight-certificate ticket and other shipping papers were sent to a Bekins office and a "Combination Standard Household Goods Bill of Lading and Expense Bill" was forwarded to the Bekins agent in Los Angeles for presentation to the customer upon delivery. The bill of lading defines the rights and obligations of the parties in performance of the services pursuant to the applicable tariff.[4] All charges for storage in transit and warehouse handling in connection therewith were entered on this through bill of lading, and storage in Bekins' Los Angeles warehouse was under this bill, not under a warehouse receipt.[5]

When the goods arrived in Los Angeles they were unloaded and placed in the warehouse, and the customer was advised of their arrival. Thereafter and within the time authorized by the tariff and upon order of the customer the goods were delivered by plaintiffs from the warehouse to the customer's residence. An additional charge pursuant to plaintiffs' tariff was made for this final delivery step. Upon such delivery the driver presented a final bill and obtained payment of all charges.

In some instances storage in transit was not ordered initially but was ordered either while the goods were en route or after they had arrived in the city of destination and prior to tender of the goods to the customer for delivery. The delivery address was given either at the time the service

---

[4]Both the service order and the bill of lading declare that "The carrier shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage in transit [with certain listed exceptions] . . . ."

[5]Whether to use storage in transit or regular storage is up to the customer. He may direct that his goods be held in regular storage in a warehouse of his choice (not necessarily one owned by Bekins), in which event a warehouse receipt will be issued, and when the customer is ready to accept the goods he will sign a new order for service and a new bill of lading will issue, and Bekins or another carrier chosen by the customer will deliver the goods as he directs. Or, the customer can direct that the storage be as storage in transit under the through bill of lading, in which case no warehouse receipt is prepared; but again a new order for service is executed by the customer when he is ready to accept delivery. He can store in transit for a limited time only—up to 60 days if the transaction is covered by the Public Utilities Commission tariff or up to 360 days if it is covered by the Interstate Commerce Commission tariff—and if he leaves the goods in storage after that period expires a warehouse receipt must be issued, and the goods are no longer in storage in transit. In none of the instances involved here were the goods left in storage for longer than the applicable storage in transit period.

order was completed or prior to expiration of the period of storage in transit.

Plaintiffs charge the customer the same amount for the haul from (as in the example) Cleveland to Los Angeles, regardless of whether the goods are delivered directly to the new Los Angeles residence or stored under a bill of lading or under a warehouse receipt. Also, if they are stored, separately stated charges are made for the warehouse storage, for the warehouse handling in connection therewith, and for delivery from the Los Angeles warehouse to the residence.

Under the facts of the example plaintiffs paid without objection taxes on gross receipts attributable to that portion of the line haul movement from Cleveland to Los Angeles which took place in California, but objected to payment of taxes on gross receipts attributable to storage in transit, to warehouse handling in connection therewith, and to delivery from the warehouse to the customer's new Los Angeles residence.

Defendants appear to concede that revenues derived from storage and handling of goods are not taxable where the storage is documented by a separate warehouse receipt, and that where the transportation from the warehouse to the new residence is documented by a *new* bill of lading (rather than the original through bill) and takes place wholly within or between incorporated cities, the revenues therefrom are not taxable. (See *ante,* fn. 5; Rev. & Tax. Code, § 9653, subd. (b), *ante,* fn. 2.) But defendants contend that where, as here, the storage, the handling, and the intracity transportation to or from the warehouse are pursuant to a through bill of lading, the revenue derived from each of such steps is taxable.

The trial court found that: The storage here involved was not an integral or any part of the transporting of the goods from the point of origin to the point of ultimate destination. Such storage did not contribute to such transportation. Plaintiffs' storage charge was separate from that made for the transportation and was separately stated on the invoices paid by the customers. The warehouse handling was not an integral or any part of the transporting of the goods, and did not contribute to such transportation but did contribute to the storage of the goods. The warehouse handling charge was separately stated on the invoices paid by the customers. Neither the storage nor the warehouse handling was essential to the transportation of the goods, or an inseparable or any part of such transportation. The transportation of the goods from

the point of origin to a warehouse for storage was a separate and distinct movement of the goods and was not a part of the transportation from the warehouse to the ultimate destination. The transportation of the goods which commenced with the pickup at the point of origin terminated when the goods were stored, and a new and separate movement commenced when they were transported from storage to the ultimate destination. The receipts for transporting the goods between storage and a residence address (whether as point of origin or point of destination) in a California metropolitan area, the taxability of which is here in issue, were derived from the transportation of property within the incorporated limits of the same municipality or contiguous municipalities, and the charges for such service were separate and apart from and in addition to the charges made for the long haul (to or from the place of storage) over state highways outside of municipal boundaries. Such charges were separately stated on the invoices paid by the customers.

The court concluded that neither the storage nor the warehouse handling was a transportation operation subject to the tax, and that the pickup and delivery service fell within the municipal exemption and was likewise not taxable under the act.

### 1. *Warehouse Handling Charges*

We are of the view that charges for carrying the goods into the warehouse if storage in transit was in the city of destination, or out of the warehouse if such storage was in the city of origin, are taxable under the ruling of this court in *Bekins Van Lines, Inc.* v. *Johnson* (1942) 21 Cal.2d 135, 139-141 [2] [130 P.2d 421]. There it was held that charges for (1) carrying goods between the sidewalk and the customer's house were taxable where incidental to transportation over state highways outside municipal boundaries. Also held taxable were (2) receipts from pick-up and delivery service made with smaller trucks within municipalities, between the point thereof and the larger highway van used for the intercity haul. Both activities, said the court, came within the term "operation of such motor vehicle or motor vehicles" as used in the act. Further, taking the goods between sidewalk and house was declared to be "an inseparable preparatory activity connected with the loading and unloading operations," the receipts from which latter operation were not claimed by plaintiff to be exempt from the tax. It may be noted, however, that the board did not there claim that sepa-

rate charges made for packing and crating labor as distinct from dismantling and moving goods between house and sidewalk, were taxable. (P. 139.) Further, no attempt was there made to tax warehousing receipts. (P. 142.)

## 2. *Delivery to and From Storage in Transit*

Defendant board contends that since the customers contracted for transportation of their goods from the old residence to the new, the move is one continuous transportation operation regardless of the interruption for temporary storage, and therefore delivery to or from such storage is not within the municipal exemption. (§ 9653, subd. (b), *ante*, fn. 2.) In support of this position it is pointed out that the shipments were made on through bills of lading, and pursuant to tariffs which provided for storage in transit, and that plaintiffs assumed carrier responsibility from point of origin to point of ultimate destination. In *Santa Fe Transp.* v. *State Board of Equalization* (1959) 51 Cal.2d 531 [334 P.2d 907], the court commented (p. 540) that ''the Legislature undoubtedly intended that the exemption should apply only where entirely intracity operations were concerned.'' In that case, however, there was no interruption for storage, either temporary or otherwise, and whether evidenced by warehouse receipt or by through bill of lading. Rather, plaintiff transportation company, a wholly owned subsidiary of a railway company, provided pickup and delivery services between local freight depots of the railway in California and the customer's warehouse or place of business in the vicinity of such depots, of goods moving on through bills of lading of the railway which were theretofore or thereafter transported by plaintiff under the same bills of lading of the railway from one station to another over public highways outside the corporate limits of cities. Plaintiff usually used for the intracity pickup and delivery services lighter equipment than that used for the ''line haul'' (intercity) move and different charges were made for intracity and intercity operations. It was nevertheless held, in reliance on *Bekins Van Lines, Inc.* v. *Johnson* (1942) *supra*, 21 Cal.2d 135, that the pickup and delivery services even though entirely intracity were an inseparable part of the entire transportation of the same property in intercity hauls, and receipts therefrom were taxable. As noted, however, no interruption for storage was there involved.

Defendant board relies upon its own administrative interpretation of the statute as set forth in rules 1403 and

1404 of title 18 of the California Administrative Code.[6] Although such interpretation is entitled to great weight it cannot, of course, prevail if erroneous or unauthorized by the applicable laws. (*Select Base Materials, Inc.* v. *Board of Equalization* (1959) 51 Cal.2d 640, 647 [13] [335 P.2d 672]; see also *Union Oil Co.* v. *State Board of Equalization* (1963) 60 Cal.2d 441, 456-457 [13] [34 Cal.Rptr. 872, 386 P.2d 496].)

### 3. *Storage in Transit*

As already noted, defendant board does not attempt to tax receipts from storage which is documented by a warehouse receipt rather than by a through bill of lading. Further, defendant notes in its brief that its rule 1403 exempts packing and crating charges "specifically on the ground that they arise prior to the time the transportation operation commences." ▮ It appears to us to accord with legislative intent to conclude, as did the trial court, that the transportation of the goods which commenced with pickup at the point of origin terminated when the goods were stored, and that a new and separate movement commenced when they were transported from storage to the ultimate destination. The further conclusion follows that receipts from storage in transit, as well as those from intracity pickup and delivery to and from such storage, are not taxable under the relevant statute.

The judgment is reversed insofar as concerns taxation of receipts from carrying the goods into the warehouse in the city of destination or out of the warehouse in the city of origin, but affirmed in all other respects.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Dooling, J.,* concurred.

---

[6]Rule 1403: "Gross receipts include all compensation derived from motor vehicle transportation operations and for all services performed incident thereto, as for example, sorting, handling, loading, unloading, pick-up and delivery, . . . storage in transit and waiting or standby time. Gross receipts means the total consideration charged for the transportation service, including all receipts . . . ."

Rule 1404: "Transportation is the act of carrying or conveying persons or property from one place to another and includes all services in connection with the receipt, movement and delivery of property transported from the place where the property is tendered the operator for transportation or the place where the operator customarily takes delivery of the property to a designated place of delivery or place where the operator customarily delivers the property."

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.