[Crim. No. 11877. Second Dist., Div. Four. July 20, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN VIS, Defendant and Appellant.

Downing & Downing and Michael Downing for Defendant and Appellant.

Evelle J. Younger, District Attorney, Wilber A. Sweeters and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Respondent.

Thomas C. Lynch, Attorney General, and Kenneth Scholtz, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Respondent.

CHANTRY, J. pro tem.*—The question presented is whether appellant was a ''contractor'' within the purview of sections 7028 and 7026 of the Business and Professions Code.

Appellant was convicted in the municipal court of the charge that he did ''wilfully and unlawfully engage in the business of and act in the capacity of a contractor, without then and there having a license obtained from the Contractors' State License Board of the State of California authorizing him so to do,'' in violation of section 7028 of the Business and Professions Code.

Upon appeal to the Appellate Department of the Superior Court of Los Angeles County the judgment[1] was reversed.

This court ordered the case transferred to it for hearing and

---

*Assigned by the Chairman of the Judicial Council.

[1]After defendant was adjudged guilty, proceedings were suspended without imposition of sentence and defendant was placed on probation. The appeal was from this order and from the order denying a new trial.

The order granting probation is appealable. (Pen. Code, § 1466, subd. 2(d).) The order denying the motion for a new trial is not separately appealable and the purported appeal therefrom must be dismissed.

552

decision upon the certification of said appellate department that such transfer appeared necessary to secure uniformity of decision and to settle an important question of law. (Cal. Rules of Court, rules 62, 63.)

Appellant entered into an oral contract with Mr. and Mrs. Tellefsen in May of 1965 whereby he agreed to provide the labor and materials necessary to landscape the front yard of real property owned by the Tellefsens. Appellant was to remove surface rocks and debris from said premises, place topsoil thereon and finish-grade, install redwood headerboards, apply weed killers and soil conditioners to the soil, and to plant the same. Tellefsens were to pay appellant therefor the sum of $748. Appellant prepared a landscape plan and performed part of the work required by the contract. The Tellefsens became dissatisfied with the progress of the job and refused to permit appellant to finish it. Appellant at no time involved was the holder of a contractor's license issued by the Contractors' Licensing Board of California.

Section 7028[2] provides: "It is unlawful for any person to engage in the business or act in the capacity of a contractor within this State without having a license therefor, unless such person is particularly exempted from the provisions of this chapter. Any violation of this section is a misdemeanor. . . ." The term "contractor" is defined in section 7026 as follows: "The term contractor for the purposes of this chapter is synonymous with the term 'builder' and, within the meaning of this chapter, a contractor is any person who undertakes to . . . or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, . . . any building, . . . excavation or other structure, project, development or improvement, or to do any part thereof . . . ."

Section 7055 provides that "For the purpose of classification, the contracting business includes any or all of the following branches: (a) General engineering contracting. (b) General building contracting. (c) Specialty contracting." Appellant obviously is not a general engineering contractor as defined in section 7056, or a general building contractor as defined in section 7057. A specialty contractor is defined as "a contractor whose operations as such are the performance of construction work requiring special skill and whose principal contracting business involves the use of specialized building trades or crafts. . . ." (§ 7058.)

---

[2]All references are to the Business and Professions Code unless otherwise indicated.

Section 7048 creates an exemption of "small operations." It provides: "This chapter does not apply to any work or operation on one undertaking or project by one or more contracts, the aggregate contract price for which labor, materials, and all other items, is less than one hundred dollars ($100), such work or operations being considered as of casual, minor or inconsequential nature. . . ." Also exempt is a "person who engages in the activities herein regulated, as an employee with wages as his sole compensation." (§ 7053.)

It is not claimed that appellant comes within either of the above exemptions, and the question to be determined is whether it appears from the undisputed facts concerning the work to be performed by appellant under the contract that the provisions of section 7028 are applicable to him.

It seems clear that the contractors' licensing statutes were intended to cover the construction industry. This industry embraces numerous specialized crafts requiring certain arts and skills—which were intended to come within the classification of the "specialty contractor."

It must be remembered that we are construing a penal statute, and such a statute "must clearly prohibit the particular conduct to which it is claimed to apply." (*MacLeod* v. *City of Los Altos,* 182 Cal.App.2d 364, 368 [6 Cal.Rptr. 326].)

"Both the California Constitution, article I, section 13, and the Constitution of the United States, Fourteenth Amendment, provide that no person shall be deprived of life, liberty, or property without due process of law. Due process means that 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' [Citations.]

"The standard to be applied is set forth in *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322] : 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process." (*Katzev* v. *County of Los Angeles,* 52 Cal.2d 360, 370 [341 P.2d 310].)

"A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed as well as a standard for the ascertainment of guilt by the courts called upon to apply it." (*People* v. *McCaughan*, 49 Cal.2d 409, 414 [317 P.2d 974].)

It is fundamental that crimes are not to be "built up by courts with the aid of inference, implication, and strained interpretation." (*Ex parte McNulty*, 77 Cal. 164, 168 [19 P. 237, 11 Am.St.Rep. 257]), and "penal statutes must be construed to reach no further than their words; no person can be made subject to them by implication." (*Ex parte Twing*, 188 Cal. 261, 265 [204 P. 1082].) "In other words, criminal statutes will not be built up 'by judicial grafting upon legislation . . . [I]t is also true that the defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.' [Citations.]'" (*People* v. *Ralph*, 24 Cal.2d 575, 581 [150 P.2d 401].) "Indeed, it is 'the policy of California . . . to construe and apply penal statutes as favorably to the defendant as the language of the statute and the circumstances of its application may reasonably permit.' [Citation.] These principles are not rendered inapplicable merely because the present action arose out of an administrative proceeding rather than a criminal prosecution; the statute to be construed remains a penal one, and the foregoing principles apply even when the underlying action is civil in nature. [Citations.]'" (*Walsh* v. *Department of Alcoholic Beverage Control*, 59 Cal.2d 757, 764-765 [31 Cal.Rptr. 297, 382 P.2d 337].) Licensing statutes which impose penalties for failure to comply therewith "should be strictly construed against the state or licensing authority and liberally construed in favor of those against whom it is sought to impose the penalty." (53 C.J.S., § 62, p. 718.)

Although the crime for which a defendant is being prosecuted must be clearly defined, "it is only necessary that the words used in the statute be well enough known to enable those persons within its reach to understand and correctly apply them. 'To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited.' [Citation.] Although higher standards of certainty will be required of penal than of civil statutes [citation], a statute is sufficiently certain if it employs words of long usage or with a common law meaning, 'notwith-

standing an element of degree in the definition as to which estimates might differ.' [Citations.]" (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 60 [216 P.2d 859].) ▮ And in *People* v. *Deibert,* 117 Cal.App.2d 410, 418 [256 P.2d 355], the court states: "Where a statute contains a reasonably adequate disclosure of the legislative intent regarding an evil to be combatted in language giving fair notice of the practices to be avoided, a court will be slow to say that such a statute is too indefinite to be enforced. ▮ The complexities of the social problems dealt with by the Legislature require that a practical construction be given to the language employed by the draftsmen of legislation lest their purposes be too easily nullified by overrefined inquiries into the meaning of words. ▮ 'Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible.' [Citation.]" (See also, *In re Cregler,* 56 Cal.2d 308, 311-312 [14 Cal.Rptr. 289, 363 P.2d 305]; *In re Huddleson,* 229 Cal.App.2d 618, 624 [40 Cal.Rptr. 581]; *People* v. *Victor,* 62 Cal.2d 280, 299-300 [42 Cal.Rptr. 199, 398 P.2d 391]; *People* v. *Daniel,* 168 Cal.App.2d Supp. 788 [337 P.2d 247], and cases therein cited.) ▮ Also, a statute must be construed in the light of the legislative design and purpose. (*People* v. *Grubb,* 63 Cal.2d 614, 620 [47 Cal. Rptr. 772, 408 P.2d 100].)

▮ The Contractors' License Law "was enacted for the safety and protection of the public against imposition by persons inexperienced in contracting work, and for the prevention of fraudulent acts by contractors resulting in loss to subcontractors, materialmen, employees, and owners of structures." (*Fraenkel* v. *Bank of America,* 40 Cal.2d 845, 848 [256 P.2d 569].) "In order to procure a license an applicant is required to make a showing of good character and of a degree of experience and general knowledge of the building, health, safety and lien laws of this state, and of the rudimentary administrative principles of the contracting business, as the board deems necessary for the safety and protection of the public. (§§ 7068, 7069.) . . . ▮ The statute in question expresses the judgment of the Legislature that the prospect of having to pay damages for incompetence, fraud and breach of contract, is not an adequate deterrent from wrongful practices in the building trades." (*Howard* v. *State of California,* 85 Cal.App.2d 361, 365 [193 P.2d 11].)

Under the Mechanics' Lien Law persons are entitled to a lien for the performance of labor or the furnishing of materi-

als to be used or consumed in "the construction, alteration, addition to, or repair, either in whole or in part, of any building, structure, *or other work of improvement.* . . ." (Italics added.) (Code Civ. Proc., § 1181.) For the purposes of that law, the phrase "work of improvement" is specifically defined and includes "the construction, alteration, addition to, or repair, in whole or in part, or any building, wharf, bridge, flume, aqueduct, well, tunnel, fence, machinery, railroad, or wagon road, the seeding, sodding, or planting of any lot or tract of land for landscaping purposes, the filling, leveling, or grading of any lot or tract of land, the demolition of buildings, and the removal of buildings. . . ." and "work of improvement" and "improvement" is said to mean the entire structure or scheme of improvement as a whole. (Code Civ. Proc., § 1182, subds. (a), (b).) Although words defined by a statute which are stated to apply specifically to a particular code or portion thereof may be of some significance in the construction of other laws (see 45 Cal.Jur.2d, § 147, p. 653), it is not clear that the Legislature intended this definition to be applicable to the Contractors' License Law.

Section 7059 of the Business and Professions Code provides that "The registrar, with the approval of the board, may adopt rules and regulations necessary to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business. . . ." Pursuant to this authority, the board has adopted a regulation, rule 732, which subdivides all specialty contracting work into 31 classes, included in which are "Landscaping Contractors," defined in Class 27 as follows: "A landscaping contractor is a specialty contractor whose principal contracting business is the execution of contracts, usually subcontracts, requiring the art, ability, experience, knowledge, science and skill to intelligently grade and prepare plots and areas of land for architectural horticulture and the decorative treatment, arrangement, planting and maintenance of gardens, lawns, shrubs, vines, bushes, trees and other decorative vegetation; construct pools, tanks, fountains, pavilions, conservatories, hot and green houses, retaining walls, fences, walks, drainage and sprinkler systems; arrange, fabricate and place garden furniture, statuary and monuments in connection therewith, or to do any part or any combination of any thereof in such a manner that, under an agreed specification, acceptable landscaping projects can be executed. (Cal. Admin. Code, tit. 16, ch. 8, § 747.)

■■ "[T]he contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such interpretation unless it is clearly erroneous or unauthorized." (*Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1].) Such administrative interpretation, however, cannot prevail if erroneous or unauthorized by the applicable laws. (*Bekins Van Lines* v. *State Board of Equalization,* 62 Cal.2d 84, 91 [41 Cal.Rptr. 297, 396 P.2d 713].) Although the board was authorized to adopt rules and regulations "to effect the classification of contractors," it is the statute which defines a contractor and an administrative ruling contrary to the terms thereof would be ineffective. (*Tux Ginger Ale Co., Ltd.* v. *Davis,* 12 Cal.App. 2d 73, 75 [54 P.2d 1122]; *Blatz Brewing Co.* v. *Collins,* 69 Cal.App.2d 639, 645-646 [160 P.2d 37].) ■■ As we construe rule 747 of the board, its definition does not include the seeding and planting of land for landscaping purposes, or the maintenance of gardens, lawns, etc., but is restricted to a contractor who grades and prepares land *for* "architectural horticulture and the decorative treatment, arrangement, planting and maintenance of gardens," etc., and who does the construction work described in the last phrase of said rule.

In *Bowline* v. *Gries* (1950) 97 Cal.App.2d 741 [218 P.2d 806], the question was whether plaintiff was a contractor under section 7026 at the time of the performance of his contract to drill a well. The court states, page 743: "The use of the word 'builder' at the commencement of section 7026, *supra,* at first glance appears slightly confusing when discussing the well drillers. However, the whole section read together makes the meaning quite clear that any 'structure, project, development or improvement' includes all sorts of structures which become a part of the realty. In our view, the drilling of a water well fairly and reasonably comes within the generally understood meaning of the words above quoted. These words are words of general significance and from a reading of the entire act we are convinced were added by the Legislature to be sure that the subject is thoroughly covered and to prevent evasion by some individual who might claim that the more specific words preceding the hereinabove quoted words were not sufficiently broad. In our opinion any of these words would have been sufficient to cover well drilling." The court then cites several cases for the proposition that a well "is a

structure."[3] *Gore* v. *Witt*, 149 Cal.App.2d 681 [308 P.2d 770], involved an action by plaintiff who entered into a contract to remove trees and level 80 acres of land. It was held that he must allege and prove that he was a duly licensed contractor, unless facts were alleged showing that he came within an exemption. It has been held that a painting contractor comes within the terms "alter, repair, add to [or] improve" a building or structure. (*Franklin* v. *Nat C. Goldstone Agency*, 33 Cal.2d 628 [204 P.2d 37] ; *Howard* v. *State of California*, 85 Cal.App.2d 361 [193 P.2d 11] ; *Norwood* v. *Judd*, 93 Cal.App.2d 276 [209 P.2d 24].)

On the other hand, the court in *Terminix Co.* v. *Contractors' State etc. Board*, 84 Cal.App.2d 167 [190 P.2d 24], held that appellant, who performed pest control work, was governed by the Structural Pest Control Act (§§ 8500-8677) and not by the Contractors' License Law; that the word "improve" as used in section 7026 cannot "reasonably be interpreted as applying to the use of Terminix fluid, unconnected with any structural work." In an opinion by the Attorney General (40 Ops. Cal. Atty. Gen. 110) it was concluded that a contractor's license was not required for the installation of parking lot striping on parking surfaces or for the installation of bumper and guard railings to separate parking spaces. In another opinion (29 Ops. Cal. Atty. Gen. 68) it was concluded that persons entering into contracts for window cleaning, or general clean-up and hauling, or cleaning fireplaces, or sanding of concrete porches, patios, etc., in excess of $100, are not contractors within the meaning of the contractors' license law.

It has been held that grading[4] and filling come within the statute.[5] Therefore, insofar as appellant's contract called for him to place topsoil upon the land and to finish-grade the same, this is the type of operation that was intended to come within the statute.

The evidence received by the trial court is not a part of the record on appeal. Therefore, we cannot determine whether any

---

[3]In 1959, by the enactment of section 7026.3, and an amendment to section 7049, well drilling operations were specifically included within the act.

[4]Grading as used in its commonly accepted meaning is a physical change of the earth's structure by excavating or filling in the surface of the land to reduce it to a common level. (See *Musto-Keenan Co.* v. *City of Los Angeles*, 139 Cal.App. 506, 514 [34 P.2d 506]; *Snoffer* v. *City of Los Angeles*, 6 Cal.App.2d 14, 19 [43 P.2d 852].)

[5]*Gore* v. *Witt, supra,* 149 Cal.App.2d 681; see also *Latipac, Inc.* v. *Superior Court*, 64 Cal.2d 278, 280 [49 Cal.Rptr. 676, 411 P.2d 564].

of the other provisions of the Vis-Tellefsen contract (e.g., removal of surface rocks, installation of headerboards) by themselves made such substantial change in the physical condition of the land as to be included within the statute as that statute has been interpreted by the Contractors' State License Board and the Attorney General.

Assuming that we conclude that only that portion of the contract which required appellant to place topsoil on the premises and to finish-grade the same brings him within the statute, another question presents itself: Would the $100 exemption apply only to that portion of the contract? Obviously, the grading and filling could be a major or a minor part of the work to be done. Section 7048 states that the chapter "does not apply to any work or operation on one undertaking or project by one or more contracts, the aggregate contract price for which labor, materials, and all other items, is less than one hundred dollars." From this language it would appear that the exemption would not be applicable, regardless of the contract price for the labor to be performed which comes within the statute, so long as the entire contract, including materials to be furnished "and all other items" exceeds $100.

We conclude that the contract herein considered falls within the provisions of sections 7028 and 7026 of the Business and Professions Code.

The order of the municipal court granting probation in case number M 42247 is affirmed. The appeal from the order denying the motion for a new trial is dismissed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 14, 1966.